UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KIMBERLY STEEL,

          Plaintiff,

    -against-

WATCH HILL MANAGEMENT CORP.,
WATCH HILL INVESTMENT PARTNERS L.P.,
PROVIDENCE INVESTMENT MANAGEMENT,
LLC and RUSSELL JEFFREY,

          Defendants.

Case No. 08-cv-01698 (GBD)

**AFFIDAVIT OF**
**RUSSELL JEFFREY**

---

STATE OF NEW YORK     )
                     )   ss.:
COUNTY OF NEW YORK  )

          RUSSELL JEFFREY, being duly sworn, deposes and says:

          I make this affidavit in support of Defendants' Providence Investment Management, LLC ("Providence") and Russell Jeffrey ("I" or "me") (collectively, "Defendants") motion to dismiss the Complaint against us, or in the alternative, to transfer venue to the United States District Court for the District of Rhode Island. A copy of the Summons and Complaint is annexed hereto as Exhibit A. A copy of Judge Joan Madden's Order, entered January 14, 2008, granting Defendants' Application for a Stay of Arbitration is annexed hereto as Exhibit B. I am fully familiar with the facts and circumstances set forth herein.

         1.    I was a General Partner of Watch Hill Investment Partners L.P. ("WHIP") when Kimberly Steel ("Steel" or "Plaintiff") began working at Watch Hill Management Corp. ("WHM") in or about February of 1995.

2.      WHM was a New York corporation that provided management services to Watch Hill Fund, L.P. ("WHF"), a New York limited partnership that invested in the mortgage market.

3.      WHIP was the general partner of WHF.

4.      On or about February 8, 1995, Steel and Watch Hill Management entered into an employment agreement (the "Agreement"). (The Agreement is annexed hereto as Exhibit A of the Complaint).

5.      Alleged violations of the Agreement are the basis for Steel's Complaint.

6.      Though I was not a party to the Agreement, I signed a clause on behalf of WHIP below the Agreement that guaranteed "full and prompt payment" of WHM's obligations to Plaintiff (the "Guaranty").

7.      In or about December of 2001, I resigned from WHIP. In 2004, I formed Providence, a hedge fund that creates and manages limited partnership funds that invest in the mortgage market.

8.      Providence was not a party to the Agreement. In fact, Providence was not established until some years after Steel and WHM entered into the Agreement.

9.      Providence is a Delaware limited liability company that maintains its principal place of business at 76 Westminister Street, The Turks Head Building, Suite 1400, Providence, Rhode Island, 02903. It does not have an office in New York.

2

10.    Providence does not regularly do business, or engage in a systematic and continuous course of doing business, in New York.

11.    Providence has not transacted business in New York, or entered into a contract to supply goods or services in New York, that is the basis upon which Plaintiff makes her claim. Its minimum contacts within the State of New York do not relate to Plaintiff's claim.

12.    Providence does not pay New York taxes or maintain offices, bank accounts employees or agents in New York.

13.    I am currently the Managing Member of Providence.

14.    I reside in Rhode Island.

15.    I do not regularly do business, or engage in a systematic and continuous course of doing business, in New York.

16.    I have not transacted business in New York, or entered into a contract to supply goods or services in New York, that is the basis upon which Plaintiff makes her claim.

17.    I do not have a New York office, bank account or property, and I do not pay taxes in New York.

WHEREFORE, it is respectfully requested that Defendants Providence and Jeffrey's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) be granted, or in the alternative, that the Court transfer venue to the United States District Court for the District of Rhode Island pursuant to 28 U.S.C. § 1404(a).

RUSSELL JEFFREY

Sworn to before me this
_6th_ day of May, 2008

Notary Public
Richmond M. Jeffrey
Term Expires : 4/30/2012
ID#: 53249

4

# EXHIBIT - A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

Kimberly Steel,                                  CASE NO. 08CV01698 (GBD)

                    Plaintiff,

      -against-

Watch Hill Management Corp.,
Watch Hill Investment Partners L.P.,
Providence Investment Management, LLC
and Russell Jeffrey,

                   Defendants.

-----------------------------------------------------X

## SUMMONS and COMPLAINT

Snow Becker Krauss P.C.
Attorneys for Plaintiff
Kimberly Steel
605 Third Avenue
New York, NY 10158
(212) 455 - 0322

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |

Kimberly Steel,

Plaintiff,                           **SUMMONS IN A CIVIL ACTION**

- v –

Watch Hill Management Corp.,                    CASE NUMBER: $O\ 8\ C\ V\ 01698\ (G\text{-}BD)$
Watch Hill Investment Partners L.P.
Providence Investment Management, LLC and
Russell Jeffrey,

Defendants.

TO: Watch Hill Management Corp.       Watch Hill Investment Partners L.L.P.      Providence Investment Management, LLC
      1865 Palmer Ave, Suite 201             1865 Palmer Ave, Suite 201                76 Westminister Street
      Larchmont, NY 10538                      Larchmont, NY 10538                       The Turks Head Building, Suite 1400
                                                                                                          Providence, RI 02903

      Russell Jeffrey
      Providence Investment Management, LLC
      76 Westminister Street
      The Turks Head Building, Suite 1400
      Providence, RI 02903

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

                    Michael H. DuBoff, Esq.
                    Snow Becker Krauss P.C.
                    605 Third Avenue, 25th Floor
                    New York, NY 10158

an answer to the complaint which is served on you with this summons, within _____30_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**

CLERK                                              DATE    FEB 2 0 2008

(By) DEPUTY CLERK

SNOW BECKER KRAUSS P.C.
605 Third Avenue
New York, New York 10158
(212) 687-3860
Paul C. Kurland (pk5179)
Michael H. DuBoff (md1902)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

Kimberly Steel,

                Plaintiff,

        -against –

Watch Hill Management Corp.,
Watch Hill Investment Partners L.P.
Providence Investment Management, LLC and
Russell Jeffrey,

                Defendants.

-----------------------------------------------------X

Index No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

        Plaintiff, Kimberly Steel ("Steel") by her attorneys Snow Becker Krauss PC as and for her complaint against Defendants Watch Hill Management Corp. ("Watch Hill Management"), Watch Hill Investment Partners L.P. ("Watch Hill Partnership") (collectively referred to as "Watch Hill"), Providence Investment Management, LLC ("Providence") and Russell Jeffrey ("Jeffrey") alleges:

## NATURE OF ACTION

        1.      Steel seeks to recover, pursuant to Paragraph 3(b) of her Employment Agreement, the "bonus for services in soliciting and obtaining investors for the [Watch Hill] Partnership" for which Watch Hill Management agreed to "pay Steel in perpetuity a quarterly bonus based upon the amount of investments in the [Watch Hill] Partnership by limited partners who are introduced by Steel to the [Watch Hill] Partnership...." That section of the Employment Agreement further states in part:

In the event the General Partner or any affiliate thereof establishes, acts as general partner to, manages, operates or controls another securities investment partnership, securities investment company, securities investment fund or securities investment account, Steel's bonus computation hereunder will, in addition to the capital accounts of Referred Limited Partners in the Partnership, include and be based, in addition, on the capital accounts of Referred Limited Partners in any such other securities investment partnership, securities investment company, securities investment fund or securities investment account.

For purposes of this Agreement, an affiliate of the General Partner shall include either of the individual general partners of the General Partner and their affiliates; and the term "affiliate" shall have the same meaning it has under the Securities Act at 1933, as amended.

Steel shall have the right from time to time to examine or have her agents examine any relevant books and records at the Partnership, General Partner and WHM (and any affiliate of any of them) during normal business hours to verify the computations of her bonus payments and make copies of capital accounts and information relating thereto. In the event of any proven discrepancies, Steel shall be reimbursed the fees and expenses incurred with respect to any such examinations. (All emphasis supplied unless otherwise noted). (A copy of the Employment Agreement is annexed hereto as Exhibit "A").

2.    Watch Hill has paid Steel the portion of the quarterly bonuses due under the

contract for the Referred Limited Partners investments with Watch Hill funds. However, Russell

Jeffrey, a General Partner of Watch Hill at the time the Employment Agreement was entered into

and a guarantor under that Agreement, left Watch Hill and became a general partner, manager,

operation and/or control person of Providence which commenced operations in or about March,

2004. Thereafter, several Steel Referred Limited Partners moved investments from Watch Hill

and invested with Mr. Jeffrey in funds maintained by Providence. Furthermore, several Steel

Referred Limited Partners invested additional amounts in Providence funds. Steel has not been

paid any of the bonus due for investments with Mr. Jeffrey in Providence funds despite demand.

Steel also seeks to recover her attorney's fees as provided for in Paragraph 6(a) of the

Employment Agreement and the cost of this proceeding pursuant to Paragraph 7(a) of the

Employment Agreement.

3.    Neither Jeffrey nor Providence has allowed Steel to examine the Providence books and records as provided for in the Employment Agreement. Therefore, she cannot confirm the number of Steel Referred Limited Partners nor the amount that the Steel Referred Limited Partners invested with Providence. However, at least one Steel Referred Limited Partner advised Steel that he invested in excess of $60,000,000 that was used to start a Providence offshore fund.

4.    Although, pursuant to the Employment Agreement, Watch Hill is obligated to pay the bonuses due from Jeffrey and Providence, it is ultimately the obligation of Jeffrey and Providence. Watch Hill is therefore named as a party because it is the conduit for the funds due from Jeffrey and Providence.

## VENUE AND JURISDICTION

5.    The Court has jurisdiction based upon 28 U.S.C. §1332. The matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand ($75,000.00) Dollars and is between citizens of different states.

6.    Venue is proper in this District under 18 U.S.C. §1391(a). The Employment Agreement that this case is based upon was entered into within the District and calls for the application of the laws of the State of New York. In addition, the Defendants whose payments were guaranteed to Plaintiff have their principal place of business within this District.

## THE PARTIES

7.    Plaintiff Steel is an individual currently residing in Ketchum, Idaho and was employed by Watch Hill Management as a Managing Director of Investment Relations, commencing February, 1995 through January 28, 2004.

8.    Watch Hill Management is a corporation existing under the laws of the State of

3

New York which, during all relevant times, had its principal place of business in Larchmont, New York and provided management services to Watch Hill Fund L.P. ("Watch Hill Fund"), a New York limited partnership whose general partner is Watch Hill Partnership.

9.    Defendant Watch Hill Partnership is a New York partnership which, during all relevant times, had its principal place of business in Larchmont, New York and was General Partner of Watch Hill Fund and guarantor of the obligation to Steel under her Employment Agreement.

10.    Defendant Jeffrey is an individual who, upon information and belief, resides in Rhode Island, was a General Partner of Watch Hill Partnership until December 2002 and guarantor of the obligations to Steel under the Employment Agreement.

11.    Subsequent to Jeffrey leaving Watch Hill, he became a general partner, manager and operation and/or control person of Providence.

12.    Defendant Providence is a limited liability company which, upon information and belief, was formed under the laws of the State of Delaware and has its principal place of business in Providence, Rhode Island.

13.    Watch Hill and Providence during all relevant times were and Providence continues to be engaged in creating limited partnership funds and/or pools (collectively referred to as "funds") that focused on investing in the mortgage market and managing assets for those funds.

## FACTS APPLICABLE TO ALL CAUSES OF ACTION

14.    Plaintiff Steel and Defendant Watch Hill Management entered into the Employment Agreement as of February 8, 1995. (A copy is annexed hereto as Exhibit "A").

15.    Watch Hill Partnership and Jeffrey guaranteed the "full and prompt payment of all of [Watch Hill Management's] obligations to Steel under this [Employment] Agreement..." in

4

addition, the guarantors consented and agreed to the validity of the guaranty and that the liability

under the guaranty would not be impaired, released or terminated by any amendment or change to

the Employment Agreement.

16.    A Supplement to the Employment Agreement was entered into as of January 1,

1996.  (A copy of the Supplement to the Employment Agreement is annexed hereto as

Exhibit "B").  The Supplement to the Employment Agreement related to certain fees and

expenses to be paid to Steel, which have been paid and are not the subject of this action.

17.    During the term of her employment and thereafter, Steel has fully complied with

all of the terms and her obligations under the Employment Agreement.

18.    During the term of her employment and in compliance with the terms of the

Employment Agreement, Steel solicited and obtained investors for funds ("Referred Limited

Partners") created and managed by Watch Hill.  Each investor as well as each investment was

approved by Watch Hill prior to any investment being accepted into any fund.

19.    Steel's employment with Watch Hill was terminated on January 28, 2004.  (A

copy of the termination letter is annexed hereto as Exhibit "C").

20.    Paragraph 3(b) of the Employment Agreement provided in part "**as a bonus for**

**services in soliciting and obtaining investors** in the partnership, WHM [Watch Hill

Management] **agrees to pay Steel in perpetuity a quarterly bonus** based upon the amount of

investments in the Partnership by limited partners who were introduced by Steel to the

Partnership..." That Paragraph goes on to specify how the bonus was computed.

21.    Paragraph 5 of the Employment Agreement provides:

> Either party may terminate Steel's employment under this Agreement by
> notice in writing to the other party at any time with or without cause.
> **Upon termination of Steel's employment under this Agreement for**
> **any reason, including for cause or by reason of a breach by Steel,**
> **[Watch Hill Management's] obligation to pay Steel or Steel's designee**
> **the bonus payment provided pursuant to Section 3(b) above will**

5

> nonetheless continue in perpetuity, provided that if the continuation
> of such payments would violate any applicable law or regulation,
> [Watch Hill Management's] obligation to make such payments will be
> suspended and cumulate; and thereafter such payments (including
> arrearages) will resume immediately after such violation is cured or
> corrected.

22.    In addition to providing for the payments of the bonus in perpetuity, the

Employment Agreement provides in Paragraph 6(a):

> [Watch Hill Management] agrees to indemnify and hold Steel
> harmless to the fullest extent permitted by law from any loss, damage,
> liability or expense, including attorney's fees, to which Steel may
> become subject arising out of or relating to any act or omission by
> [Watch Hill Management] or any person or entity affiliated,
> connected or associated with [Watch Hill Management]) which is or is
> alleged to be a violation of any applicable statutes, laws or regulations
> or arising from the negligence or willful misconduct of [Watch Hill
> Management]....

23.    In or about December, 2002 Jeffrey left Watch Hill and thereafter, formed

Providence which was and is engaged in substantially the same business as Watch Hill.

24.    Jeffrey solicited and/or accepted investments from Referred Limited Partners that

Steel had introduced to Watch Hill while Jeffrey was a General Partner of Watch Hill.

25.    Upon information and belief, Steel Referred Limited Partners have invested

additional amounts in Providence funds.

26.    Watch Hill has made the required bonus payments due to Steel for Steel Referred

Limited Partners in the Watch Hill funds.

27.    Watch Hill did not make the bonus payment due to Ms. Steel for bonus payments

due based upon the Steel Referred Limited Partners investments with Mr. Jeffrey and/or

Providence.

28.    The obligation for the unpaid bonus payments is based upon Steel Referred

Limited Partners investments with Jeffrey in funds maintained by Providence.

6

29.    Upon information and belief, Watch Hill ceased operating its funds on or about December 31, 2006.

30.    Steel has not been paid any portion of her bonus for the Steel Referred Limited Partners investments with Mr. Jeffrey and/or Providence funds.

31.    Jeffrey and Providence have refused to make any bonus payments due to Steel under the Employment Agreement for Steel Referred Limited Partners investments with Jeffrey and/or Providence funds although demand for payment has been made by Steel.

32.    Jeffrey and Providence have refused to allow Steel to examine the Providence books and records in order to determine the amount of bonus payments due to her as a result of Steel Referred Limited Partners investments with Providence.

33.    Defendant Jeffrey is liable to Ms. Steel pursuant to his guaranty of the full and prompt payment of Watch Hill Management's obligations to Ms. Steel.

34.    By reason of the foregoing, Defendants Jeffrey and Providence are jointly and severally liable to claimant Steel for the compensation due to her pursuant to Paragraph 3(b) of the Employment Agreement, as well as her attorneys' fees pursuant to Paragraph 6(a) and for the costs of this proceeding pursuant to Paragraph 7(a) of the Employment Agreement.

35.    Watch Hill is liable to Steel as the conduit for the Jeffrey and Providence obligations.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

36.    Steel incorporates and realleges the allegations contained in paragraph 1 through 35 as is fully set forth herein.

37.    Pursuant to the terms of the Employment Agreement and Guaranty Defendants are obligated to pay Steel or her designee or heirs in perpetuity a quarterly bonus based upon the

7

amount of investments by Referred Limited Partners whether or not she is employed by any of
the Defendants.

38.    Pursuant to the Employment Agreement Steel and/or her agents have the right to
examine any of Defendants' relevant books and records.

39.    Despite demand, Defendants have failed and refused to provide Steel with an
accounting of the investments by Referred Limited Partners in the Providence Funds and to pay
Steel the quarterly bonus based upon the investments.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Violation of New York Labor Law)**

40.    Steel incorporates and realleges the allegations contained in paragraph 1 through
39 as is fully set forth herein.

41.    New York Labor Law § 191-c provides:

**Payment of sales commission**
1.  When a contract between a principal and a sales representative is terminated, all
earned commissions shall be paid within five business days after termination or within
five business days after they become due in the case of earned commissions not due
when the contract is terminated.

2. The earned commission shall be paid to the sales representative at the usual place of
payment unless the sales representative requests that the commission be sent to him or
her through the mails.  If the commissions are sent to the sales representative by mail,
the earned commissions shall be deemed to have been paid as of the date of their
postmark for purposes of this section.

3. A principal who fails to comply with the provisions of this action concerning timely
payment of all earned commissions shall be liable to the sales representative in a civil
action for double damages.  The prevailing party in any such action shall be entitled to
an award of reasonable attorney's fees, court costs, and disbursements.

42.    Defendants' failure to pay Steel the commissions due to her is a violation of New
York Labor Law § 191-c (1).

43.    As a result of the violation, New York Labor Law § 191-c (3) provides that
Defendants are liable to Steel for double damages and reasonable attorney's fees.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST DEFENDANTS JEFFREY AND PROVIDENCE
### (Tortious Interference with Contractual Rights)

44.    Steel incorporates and realleges the allegations contained in paragraph 1 through 43 as is fully set forth herein.

45.    At the time Jeffrey and Providence solicited and/or accepted investments from Referred Limited Partners of Watch Hill, they were aware of the Employment Agreement with Steel.

46.    The solicitation and/or acceptance of investments from Referred Limited Partners without paying Steel the agreed upon bonus payments deprived Steel of the compensation that she was entitled to for the Steel Referred Limited Partners.

## AS AND FOR A FOURTH CAUSE OF ACTION
## AGAINST DEFENDANTS JEFFREY AND PROVIDENCE

47.    Steel incorporates and realleges the allegations contained in paragraph 1 through 46 as is fully set forth herein.

48.    As a result of Jeffrey's and Providence's solicitation and/or acceptance of investments from Referred Limited Partners, they received the benefits of such investments.

49.    Based upon the Employment Agreement, which Defendants were aware of, Steel was entitled to bonus payments based upon the amount of investments by Referred Limited Partners in funds which Jeffrey establishes to act as a general partner, manager, operator or control person.

50.    Providence and Jeffrey received the benefit of the investments from Referred Limited Partners and did not pay Steel the contractual bonus she was and is entitled to.

WHEREFORE, Plaintiff Kimberly Steel seeks Judgment against Defendants Watch Hill Management Corp., Watch Hill Investment Partners L.P. Providence Investment Management,

9

LLC and Russell Jeffrey, jointly and severally as follows:

(a) On the First Cause of Action directing Defendants to permit Steel and/or her agent to inspect their books and records relating to investments by Steel Referred Limited Partners in Providence finds and, as provided for in the Employment Agreement Paragraph 3(b), to reimburse Steel for the fees and expenses incurred with respect to such examinations;

(b) On the Second Cause of Action for the additional relief Steel is entitled to under the New York Labor Law;

(c) directing Defendants to provide Steel with an accounting of the unpaid bonuses;

(d) that each of the Defendants are jointly and severally liable to Steel for that sum, plus interest, attorneys' fees and costs of this action;

(e) that Defendants are liable to Ms. Steel for the bonus payments in perpetuity as provided for in the Employment Agreement; and

(f) granting such other and further relief as this Court deems just and proper.

Dated:    New York, New York
          February 17, 2008

                                        Snow Becker Krauss P.C.

                                        By: _____
                                        Michael H. Du Boff
                                        Attorneys for Plaintiff
                                        605 Third Avenue
                                        New York, NY 10158
                                        (212) 687-3860

**TO:**    Watch Hill Management Corp.,
           Watch Hill Investment Partners L.L.P.
           1865 Palmer Ave, Suite 201
           Larchmont, NY 10538

           Providence Investment Management, LLC
           76 Westminister Street
           The Turks Head Building, Suite 1400
           Providence, RI 02903

Russell Jeffrey
Providence Investment Management, LLC
76 Westminister Street
The Turks Head Building, Suite 1400
Providence, RI 02903

S:\MHD\Steel\Steel\Legal\Complaint 2008.1.23.doc

# EXHIBIT A

FROM KLEINBERG, KAPLAN                              (MON)02.13'95 17:52/ST. 17:40/NO. 3560453972 P 9/14

## EMPLOYMENT AGREEMENT

AGREEMENT as of February 8, 1995, by and between Watch Hill Management Corp., a New York corporation ("WHM"), with offices at 1865 Palmer Avenue, Larchmont, New York 10538, and Kimberly Steel ("Steel"), residing at 1010 Fifth Avenue, New York, New York 10028 .

WHEREAS, WHM provides management services to Watch Hill Fund L.P. (the "Partnership"), a New York limited partnership, whose general partner is Watch Hill Investment Partners L.P. (the "General Partner"), a New York limited partnership that is an affiliate of WHM and shares its office address.

WHEREAS, WHM desires to retain Steel to provide services for WHM, the General Partner and the Partnership on the terms and conditions set forth in this Agreement, and Steel is willing to undertake employment, and the General Partner is willing to guaranty WHM's obligations to Steel to induce Steel to undertake employment, upon these terms and conditions;

NOW, THEREFORE, in consideration of the foregoing and in consideration of their mutual promises and agreements contained in this Agreement, the parties agree as follows:

### 1.   Term of Employment

WHM agrees to employ Steel as Managing Director, Investor Relations, or in such other position as WHM and Steel may agree, for a term beginning on February 8, 1995 and ending on December 31, 1995, subject to prior termination pursuant to Section 5.  Thereafter, Steel's employment shall continue from year to year, subject to prior termination pursuant to Section 5.

### 2.   Nature of Employment Duties

(a)  General Duties.  Steel's primary duties and responsibilities shall be to manage investor relations and to provide administrative, management and marketing services for the Partnership.  Specifically, Steel shall be responsible for the following activities:

> (i)  assisting in the production of monthly "Mortgage Market/Derivative Review" and other written client correspondence;

> (ii)  acting as the liaison to limited partners of the Partnership (including responding to their questions and informing them of their capital account values in the Partnership);

> (iii)  assisting in supervision of administrative and operational tasks in connection with production of monthly limited partners' statements;

KKAPLA\10030494.3(AGT) — 2/13/95

> (iv)   assisting in development of new format for limited
>        partners' statements introducing graphic
>        technology;
>
> (v)    maintenance of all executed copies of the limited
>        partnership agreement and subscription agreements
>        of the Partnership.
>
> (vi)   assisting in the development of a business plan
>        for the introduction of an off-shore fund by the
>        General Partner or its affiliate;
>
> (vii)  assisting with securities analyses, hedging
>        strategies and new product evaluation.

Steel shall also perform such other executive duties within the
areas set forth above as may be reasonably assigned to her from
time to time by WHM.

(b)   Investor Marketing Duties.   Steel shall solicit
prospective investors to become limited partners of the
Partnership.   Steel shall conduct these marketing activities in
accordance with the terms and conditions set forth in the
Offering Memorandum of the Partnership (as it may be amended from
time to time) and applicable laws and regulations.   Specifically,
Steel will only solicit prospective investors (1) with whom
either Steel, the Partnership or the General Partner has a
substantive pre-existing relationship or (2) otherwise in a
manner so as to comply with the relevant requirements of
Regulation D under the Securities Act of 1933.   WHM or the
General Partner will inform Steel from time to time concerning
the states and other jurisdictions in which solicitations of
investors in the Partnership may be made under the applicable
state securities laws.   Steel will keep WHM and the General
Partner informed concerning her marketing activities.

Prior to marketing to any new investors, Steel will
provide WHM with the names and relevant descriptions of any such
investors.   WHM (1) will require any party hired to solicit or
who solicits investors for the Partnership to provide the General
Partner with the same information prior to conducting marketing
activities and (ii) will allow Steel to identify any names of
potential investors listed by the other solicitor with whom Steel
has established contacts or prior dealings so that Steel alone
will be entitled to conduct the marketing activities as to any
such investors.

3.    Compensation

(a)   Salary.   As compensation for Steel's services.
WHM will pay Steel a monthly salary of $2,500 ($30,000 per
annum), to be paid on or about the last day of each month.

(b)   Bonus.   As a bonus for services in soliciting and
obtaining investors for the Partnership, WHM agrees to pay Steel
in perpetuity a quarterly bonus based on the amount of

investments in the Partnership by limited partners who are introduced by Steel to the Partnership ("Referred Limited Partners") calculated in the manner hereinafter set forth in this paragraph.  The quarterly bonus will be equal to .25 of 1% of the value of the aggregate capital accounts of the Referred Limited Partners in the Partnership.  For this purpose, the capital accounts shall be valued as of the last day of each calendar quarter during which they are invested in the Partnership, and a bonus payment of .25 of 1% of such amounts shall be made to Steel within 10 days after the end of each such calendar quarter.  In the case that investments are made by any Referred Limited Partners during a calendar quarter, the bonus payment shall be pro rated as to such investments.

Any bonus payments to Steel shall be reduced by the amount of any salary payments made previously during a particular calendar year.

In the event that the Partnership increases its Management Fee (as set forth in Section 6.01 of the Limited Partnership Agreement of the Partnership), WHM agrees to increase the compensation paid to Steel from .25 of 1% per quarter of the capital accounts of Referred Limited Partners by an amount equal to 50% of the percentage increase in the Management Fee.

"Referred Limited Partners" shall include any limited partners (or persons or entities having an interest in a limited partner) from among the following; (i) any person or entity introduced by Steel to the General Partner or the Partnership (or any subsidiary, affiliate, successor or assign of the General Partner or Partnership) from time to time during or after the termination of her employment; (ii) any relative, subsidiary, affiliate, successor or assign of any such person or entity introduced by Steel; and (iii) any person or entity (or relative, subsidiary, affiliate, successor or assign thereof) introduced to the General Partner or the Partnership by any person or entity (or relative, subsidiary, affiliate, successor or assign thereof) introduced by Steel.  Any objection the General Partner or WHM may have to the categorization of any person or entity as someone introduced by Steel must be made in writing and received by Steel within 5 business days of disclosure to the General Partner of the name; failure to make such timely objection shall conclusively establish the General Partner's agreement to accept and treat such person or entity as introduced by Steel.

In the event the General Partner or any affiliate thereof establishes, acts as general partner to, manages, operates or controls another securities investment partnership, securities investment company, securities investment fund or securities investment account, Steel's bonus computation hereunder will, in addition to the capital accounts of Referred Limited Partners in the Partnership, include and be based, in addition, on the capital accounts of Referred Limited Partners in any such other securities investment partnership, securities investment company, securities investment fund or securities investment account.

MWAPLA\10030494.3(AWT) - 2/13/95                    - 3 -

For purposes of this Agreement, an affiliate of the General Partner shall include either of the individual general partners of the General Partner and their affiliates; and the term "affiliate" shall have the same meaning it has under the Securities Act of 1933, as amended.

Steel shall have the right from time to time to examine or have her agents examine any relevant books and records of the Partnership, General Partner and WHM (and any affiliate of any of them) during normal business hours to verify the computations of her bonus payments and make copies of capital accounts and information relating thereto. In the event of any proven discrepancies, Steel shall be reimbursed the fees and expenses incurred with respect to any such examinations.

(c) Vacation. Steel shall be entitled to four weeks paid vacation during each calendar year in which she is employed by WHM.

(d) Employment Benefits. Steel shall be entitled to all major medical and other benefits as are afforded to employees of WHM generally.

(e) Travel, Entertainment and other Business Expenses. WHM shall reimburse Steel for any out-of-pocket expenses undertaken on behalf of WHM or its affiliates during her employment for the purpose of soliciting prospective investors or otherwise incurred by Steel with respect to her services hereunder. Any such reimbursed expenses in excess of $5,000 in any calendar year shall be deducted form the bonus payments provided in subparagraph (b) in the following manner:

(a) 150% of the amounts reimbursed for meals and entertainment expenses will be deducted from subsequent bonus payments; and

(b) 100% of the amounts reimbursed for travel and other business expenses will be deducted from subsequent bonus payments.

4.    Exclusivity

Steel agrees that, during the term of her employment, she will not directly or indirectly engage in the investment advisory, marketing or management business for any parties directly competitive to the Partnership. "Directly competitive" shall mean funds which invest primarily in "mortgage related securities" (as defined in the Partnership's limited partnership agreement).

5.    Termination

Either party may terminate Steel's employment under this Agreement by notice in writing to the other party at any time with or without cause. Upon termination of Steel's employment under this Agreement for any reason, including for

KKAPLA\10030494.3(AGT) - 2/13/95              - 4 -

cause or by reason of a breach by Steel, WHM's obligation to pay Steel or Steel's designee the bonus payment provided pursuant to Section 3(b) above will nonetheless continue in perpetuity, provided that if the continuation of such payments would violate any applicable law or regulation, WHM's obligation to make such payments will be suspended and cumulate; and thereafter such payments (including arrearages) will resume immediately after such violation is cured or corrected.

### 6.   Indemnification

(a)  WHM agrees to indemnify and hold Steel harmless to the fullest extent permitted by law from any loss, damage, liability or expense, including attorney's fees, to which Steel may become subject arising out of or relating to any act or omission by WHM (or any person or entity affiliated, connected or associated with WHM) which is or is alleged to be a violation of any applicable statutes, laws or regulations or arising from the negligence or willful misconduct of WHM (or any person or entity affiliated, connected or associated with WHM); however, excluded from such indemnity shall be any claims based on Steel's gross negligence or her willful violation of this Agreement.

(b)  Steel agrees to indemnify and hold harmless WHM to the fullest extent permitted by law from any loss, damage, liability or expense, including attorney's fees, to which WHM may become subject arising out of or relating to any act or omission by Steel that is not within the direction or control of WHM and which is or is alleged to be a violation of any applicable statutes, laws or regulations or arising from the negligence or willful misconduct of Steel; however, excluded from such indemnity shall be any claims based on WHM's gross negligence or violation of this Agreement.

### 7.   Miscellaneous

(a)  This Agreement shall be construed and interpreted according to the laws of the State of New York.  Any dispute shall be submitted to binding arbitration in New York, New York under the then prevailing rules of the American Arbitration Association and judgment entered up on any award thereof in any court of competent jurisdiction.  The prevailing party in any such arbitration proceeding shall be entitled to reimbursement of costs and legal fees.

(b)  This Agreement constitutes the entire understanding and supersedes all prior understandings among the parties, and it may only be amended or replaced by an agreement in writing and signed by all parties.

(c)  This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, successors and assigns.

(d)  No failure or delay by any party in exercising any right shall operate as a waiver of such right.

(e)  Any notice required or permitted hereunder shall
be in writing and sent by certified mail, return receipt
requested, by facsimile or by hand delivery addressed to a party
at his respective address first set forth above or to such other
address as any party has theretofore provided notice to the other
parties hereunder.

(f)  If any provision of this Agreement shall be held
or determined to be unenforceable, the balance of this Agreement
shall nevertheless continue in full force and effect, and such
provision which is held or determined to be unenforceable, as
written, shall nonetheless be in force and binding to the fullest
extent permitted by law, as though written in such a manner and
to such an extent as to be enforceable under the circumstances.

(g)  This Agreement may be executed in one or more
counterparts each of which shall be deemed an original.

IN WITNESS WHEREOF, the parties have executed this
Agreement as of February 8, 1995.

WATCH HILL MANAGEMENT CORP.

By _____

_____
Kimberly Steel

The undersigned hereby guaranties full and prompt
payment and all of WHM's obligations to Steel under this
Agreement and consents in advance and agrees that the validity of
this guaranty and the undersigned's liability hereunder shall not
be impaired, released or terminated by any amendment to or change
in this Agreement (and any such amendment or change shall be
included in and covered by this guaranty).

WATCH HILL INVESTMENT PARTNERS L.P.

By _____
Russell J. Jeffrey, General Partner

By _____
David J. Weisberger, General Partner

<u>Supplement to Employment Agreement</u>

AGREEMENT as of January 1, 1996, by and between Watch Hill Management Corp., a New York corporation ("WHM"), and Kimberly Steel ("Steel").

WHEREAS, WHM and Steel are parties to an Employment Agreement (the "Agreement") dated as of February 8, 1995

WHEREAS, WHM and Steel wish to supplement the terms and provisions of that Agreement.

NOW, THEREFORE, in consideration of the foregoing and in consideration of their mutual promises and agreements contained in this Agreement, the parties agree as follows:

1.  <u>Expense and Reimbursement Allowance</u>

a)  The annual out-of-pocket expenses to be allowed and reimbursed to Steel pursuant to Section 3(e) of the Agreement for each of calendar years 1995 and 1996 shall be $25,000. Any excess over $25,000 of the out-of-pocket expenses incurred by Steel attributable to 1995 shall be applied against the $25,000 allowance for 1996 and shall be paid in a timely manner. Any excess of reimbursable aggregate expenses over $50,000 attributable to 1995 and 1996 shall be deducted from bonus payments made to Steel, pursuant to Section 3(e) of the Agreement.

b)  The annual expense allowance for any calendar year after 1996 shall be $5,000. This annual allowance will be pro-rated in the event that Steel's employment under the Agreement is terminated. (1/28/04  Termination)

c)   In the event of termination of Steel's employment under the Agreement, there shall be no expense allowance paid to Steel for periods following the date of termination of her employment.  For periods following the date of termination of Steel's employment under the Agreement, there shall be paid an annual client communications allowance at the rate of $5,000 per annum.  The client communications allowance will be paid quarterly at the same time that the Referred Limited Partner bonus is paid pursuant to Section 3(b) of the Agreement, provided that (i) Steel continues client communications with Referred Limited Partners and (ii) there shall have been no reductions in Referred Limited Partner capital accounts (excluding any reduction in Steel's own account) as a result of marketing efforts of Steel for any competing investment entity.

2.   Treatment of Steel Personal Account

For each calendar year beginning in 1996:

a)   The limited partner capital account of Steel in Watch Hill Fund L.P. (the "Steel Account") shall not be charged with the 20% profits allocation to the general partners (the "incentive allocation").

b)   The Steel Account will be charged with the quarterly management fee (1% per annum), but shall be treated as a Referred Limited Partner account (as that term is defined in the Agreement), which will entitle Steel to bonus payments attributable to the Steel Account.  The Steel Account will continue to be treated as a Referred Limited Partner account if Steel's employment under the Agreement is terminated.

c)   If Steel's employment under the Agreement is terminated, the Steel Account shall continue to be exempt from

2

the incentive allocation, provided that (i) Steel continues
client communications with Referred Limited Partners and (ii)
there shall have been no reductions in Referred Limited Partner
capital accounts (excluding any reduction in Steel's own account)
as a result of marketing efforts of Steel for any competing
investment entity.

Terms that are used herein that are not defined shall
have the same meaning as used in the Agreement. Except as
expressly set forth herein, the Agreement shall continue in full
force and effect.

IN WITNESS WHEREOF, the parties have executed this
Agreement as of January 1, 1996.

WATCH HILL MANAGEMENT CORP.

By _____
    David J. Weisberger

_____
    Kimberly Steel

00770002.AF5                           3

# EXHIBIT - B

SCANNED ON 1/28/2008

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____*MADDEN*_____                    PART _*II*_
                        **Justice**

*PROVIDENCE INVESTMENT MANG*        INDEX NO. _*113142/07*_

                                    MOTION DATE _*10-11-07*_
                    - v -
*KIMBERLY STEEL*                    MOTION SEQ. NO. _*001*_

                                    MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this ~~motion~~ to/for *application Stay arbitration.*

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits | _____ |
| Replying Affidavits | _____ |

Cross-Motion: ☐ Yes  ☒ No

Upon the foregoing papers, it is ordered that this ~~motion~~ *application is decided in accordance with the annexed memorandum Decision, Order + Judgment*

**UNFILED JUDGMENT**

nis judgment has not been entered by the County Clerk
and notice of entry cannot be served based hereon. To
obtain entry, counsel or _____ representative must
appear in person at the Judgment Clerk's Desk (Room
11B)

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: *January 17, 2008*                    _____ J.S.C.

Check one: ☒ FINAL DISPOSITION    ☐ NON-FINAL DISPOSITION

Check if appropriate: ☐ DO NOT POST    ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 11
-------------------------------------------------------------------X
PROVIDENCE INVESTMENT MANAGEMENT
COMPANY and RUSSELL JEFFREY,                           Index No.: 113142/2007
                        Petitioners

            -against-

KIMBERLY STEEL,

                        Respondent.
-------------------------------------------------------------------X
JOAN A. MADDEN, J.

     Petitioners Providence Investment Management Company ("Providence") and Russell

Jeffrey ("Jeffrey") move for a stay of arbitration pursuant to CPLR 7503(b) on the grounds that

they did not enter into an agreement to arbitrate.  Respondent Kimberly Steel ("Steel") opposes

the petition, which is granted for the reasons below.

Background

     In or about February 1995, Steel began working as the Managing Director of Investment

Relations of non-party Watch Hill Management Corp. ("WHM"), a New York corporation

providing management services to non-party Watch Hill Fund, L.P. ("WHF"), a New York

limited partnership that invests in the mortgage market. Watch Hill Investment Partners, L.P.

("WHIP") is the general partner of WHF.  At the time that Steel began to work for WHM, Jeffrey

was one of two general partners of WHIP.

     In or about December 2002, Jeffrey left WHIP, and thereafter formed Providence.  Like

WHM, Providence is a private investment company which creates limited partnership funds that

focus on investing in the mortgage market and in managing the assets of those funds.  Steel was

1

employed by WHM until 2004. In December 2006, WHM, WHF and WHIP ceased operations.

The terms of Steel's employment at WHM are set forth in an Employment Agreement dated February 8, 1995 ("the Agreement"). Paragraph 7(a) of the Agreement provides, in part, that "[t]his Agreement shall be construed and interpreted according to the laws of the State of New York. Any dispute shall be submitted to binding arbitration in New York, New York under the prevailing rules of the American Arbitration Association and judgment entered upon any award thereof in any court of competent jurisdiction...."

In accordance with paragraph 2(b) of the Agreement, Steel was "to solicit prospective investors to become limited partners of [WHF] ." Paragraph 3 of the Agreement addresses Steel's compensation. Of relevance here, paragraph 3 (b) provides, in part, that "[a]s a bonus for services in soliciting and obtaining investors for [WHF], WHM agrees to pay Steel in perpetuity a quarterly bonus based on the amount of investments in the [WHF] by limited partners who are introduced by Steel to [WHF] ("Referred to Limited Partners")....." It further provides that "[i]n the event WHIP or any affiliate thereof acts as general partner to or controls another security investment partnership, securities investment company, securities investment fund or securities investment account...Steel's bonus computation hereunder will ...include and be based, in addition, on the capital accounts of Referred Limited Partners in such other security investment partnership, securities investment company, securities investment fund or securities investment account, [and that].. [f]or the purposes of this Agreement an affiliate of [WHIP] shall include either of the individual general partners of the General Partner of their affiliates."

The Agreement is signed by Steel and a representative of WHM. Directly beneath the signature lines of the Agreement is a guarantor clause signed by Jeffrey and the other individual

2

general partner on behalf of WHIP. The clause "guaranties full and prompt payment and all of WHM's obligations to Steel under this Agreement and consents in advance and agrees that the validity of this guaranty and the undersigned's liability hereunder shall not be impaired, released, or terminated by any amendment to or change in this Agreement (and any such amendment or change shall be included in and covered by this guaranty). "

On or about September 10, 2007, Steel served a demand for arbitration before the American Arbitration Association ("AAA") on WHM, WHIP, Jeffrey and Providence pursuant to the arbitration provision in the Agreement, seeking to recover certain bonus payments under paragraph 3(b) of the Agreement. While Steel alleges that WHM paid her all the bonus payments due to her based upon investment in WHF, Steel asserts that she is owed bonus payments for investments in Providence made by limited partners introduced by Steel to WHF, and subsequently solicited by Jeffrey. Steel also alleges that since WHIP ceased operating its funds in December 2006, and cannot pay the Jeffrey and Providence debts to her, that Jeffrey, as a general partner of WHIP is personally liable for these payments.

Following the service of the demand for arbitration, Jeffrey and Providence moved by order to show cause to stay the arbitration on the ground that they were not parties to the Agreement containing the arbitration provision, and that although Jeffrey signed the guaranty the guaranty did not incorporate the other provisions of the agreement, and thus did not indicate an intent by Jeffrey to arbitrate disputes arising under the Agreement.

In opposition, Steel argues that Jeffrey is required to arbitrate since he, was a general partner of WHIP at the time the Agreement was signed and WHIP was a party to the Agreement. In support of its position, Steel relies on the introductory paragraph of the Agreement that states

3

that WHM is retaining Steel's services for "WHM, [WHIP] and [WHF] on the terms and conditions set forth in this Agreement and that Steel is willing to undertake employment and [WHIP] is willing to guaranty WHM's obligations to Steel to induce Steel to undertake employment, upon these terms and provisions."

Steel further argues that Jeffrey is bound by the arbitration provision as the guaranty that he signed and the Agreement are "inextricably intertwined" particularly as WHIP is referenced throughout the Agreement, and that the arbitration provision in the Agreement is broad enough to bind non-signatories.[1]

With respect to Providence, Steel argues that although it was not a party to the Agreement and did not exist when it was signed, Providence should be equitably estopped from avoiding the Agreement's arbitration provision since it knowingly accepted benefits under the Agreement.

Discussion

On a petition to stay arbitration, the initial inquiry for the court is whether there was an agreement to arbitrate. CPLR 7503; Smith Barney Shearson, Inc. v. Sacharow, 91 NY2d 39, 45 (1997). As arbitration is contractual by nature, a party cannot be required to arbitrate any dispute that it has not agreed to arbitrate. Waldron v Goddess, 61 NY2d 181, 183 (1984); see also, Thomson-CSF, S.A. v American Arbitration Assn., 64 F3d 773, 776 (2d Cir 1995). Since an agreement to arbitrate involves the "surrender [of] the right to resort to the courts," such an agreement must be clear, explicit, and unequivocal and must not depend upon implication or subtlety. Waldron v Goddess, 61 NY2d at 183-184.

---

[1]Although Steel argues that Jeffrey personally assumed an obligation to pay Steel's bonus compensation under paragraph 3(b) of the Agreement, aside from the guaranty clause, there is no evidence that he undertook such an obligation.

4

Under this standard, it cannot be said that WHIP is a party to the Agreement and that

Jeffrey, as a general partner of WHIP, is thus bound to arbitrate the dispute with Steel. While the

introductory paragraphs indicate that WHM, WHF and WHIP were intended to benefit from the

services provided by Steel under the Agreement, and refer to WHIP's guaranty of WHM's

obligations under the Agreement, these provisions are insufficient to make WHIP a party to the

Agreement. Significantly, the first paragraph of the Agreement states that it is between WHM

and Steel. In addition, a review of the Agreement indicates it is an employment agreement

between Steel and WHM only, and that the duties and obligations specified under the Agreement

are between Steel and WHM. See Allegro Resorts Corp. v. Trans-Americainvest (St Kitts)

Limited, 1 AD3d 269 (1st Dept 2003)(affirming the trial court's holding that the guarantor was

not a party to a lease agreement containing an arbitration clause even though the guarantor was

mentioned in the first paragraph of the lease since the lease otherwise provided that it was

between the landlord and tenant only); Warner v. U.S. Securities & Future Corp., 257 AD2d 545

(1st Dept), lv denied, 93 NY2d 807 (1999)(argument that clearing broker was a party to

agreement and therefore required to arbitrate based on an introductory clause depended too much

upon "implication or subtlety" for the purposes of compelling arbitration with a nonsignatory).

Moreover, although Jeffrey guaranteed the obligations under the Agreement, such

guaranty alone is insufficient to require him to arbitrate based on the arbitration provision in the

Agreement. It has been held that the guarantor of a principal agreement that contains an

arbitration clause may not be compelled to arbitrate a dispute under the principal agreement

where the guarantee agreement does not explicitly or by incorporation contain an arbitration

clause. Calvin Klein Co. v Minnetonka, Inc., 88 AD2d 503 (1st Dept 1982); Allegro Resorts

5

Corp. v. Trans-Americainvest (St Kitts) Limited, 1 AD3d at 270. Here, while the guaranty clause refers to and guaranties WHM's obligations under the Agreement, it does not contain an arbitration provision or expressly incorporate the terms of the Agreement, including the arbitration provision.

Next, even assuming arguendo that the guaranty and Agreement are "inextricably intertwined," such interrelatedness, standing alone, is insufficient to subject a nonsignatory to arbitration. See TNS Holdings, Inc. v MKI Securities Corp., 92 NY2d 335, 340 (1998); Mionis v. Bank Julius Baer & Co., LTD., 301 AD2d 104, 111 (1st Dept 2002). Furthermore, in the absence of language indicating that the guaranty incorporated the Agreement by reference, the broad wording of the arbitration provision is insufficient to require Jeffrey to arbitrate. Compare, Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F2d 42, 48 (2d Cir. 1993)(parties to insurance policy were required to arbitrate when policy was subject to an agreement containing broadly-worded arbitration provision which was not restricted to the immediate parties to the agreement).

In addition, the guaranty's location beneath the signature lines of the Agreement does not evince an intent to bind Jeffrey by the terms of the Agreement, including the arbitration provision. See Grundstad v. Ritt, 106 F3d 201, 205 (7th Cir. 1997)(holding that the fact that the guaranty appeared immediately beneath signature line of underlying agreement containing arbitration clause did not establish that the guaranty was part of underlying agreement for purposes of determining whether the guarantor intended to be bound to arbitrate disputes arising from the guaranty); compare, Development Bank of the Phillippines v. Chemtex Fibers, Inc., 617 FSupp 55 (SD NY 1985)(holding that guarantor was required to arbitrate since it was a signatory

6

and a party to the underlying agreement, and it initialed every page of the agreement including the page containing the arbitration clause). Accordingly, Jeffrey cannot be required to arbitrate based on the arbitration provision in the Agreement.

The remaining issue is whether Providence is subject to arbitration based on an estoppel theory. A party who knowingly exploits an agreement with an arbitration clause and directly benefits from it, can be estopped from avoiding arbitration under the agreement even though the party never signed it. HRH Construction LLC v. Metropolitan Transportation Authority, 33 AD3d 568 (1ˢᵗ Dept 2006); Thomson-CSF, S.A. v American Arbitration Assn., 64 F3d at 777. Steel argues that the estoppel theory applies as Providence received substantial benefits from the work Steel performed under the Agreement since Providence engaged in a competing business with WHF and solicited and accepted investments from Referred Limited Partners that Steel introduced to WHF. Moreover, Steel argues that since Jeffrey controls Providence, these benefits were knowingly received by it.

However, this argument is without merit as although Providence arguably benefitted from the Agreement, such benefit was indirect since Providence "exploited the contractual relationship between the parties and not the agreement itself." MAG Portfolio Consultant, GMBH v. Marin Biomed Group LLC, 268 F3d 58, 61 (2d Cir 2001). In other words, any benefit obtained by Providence was a result of Steel's performance of her obligations under the Agreement for WHF and not the product of Providence's exploitation of the Agreement itself. See e.g. Thomson-CSF, S.A. v American Arbitration Assn., 64 F3d at 778-779 (holding that the benefit derived by a third-party competitor and nonsignatory to exclusive trade agreement between two companies was indirect where nonsignatory acquired one of the companies and

7

used the exclusive trade arrangement between the parties to squeeze the remaining company out

of the market); compare, HRH Construction LLC v. Metropolitan Transportation Authority, 33

AD3d 569 (finding that nonsignatory to a construction management agreement directly benefitted

from it when the non-signatory took over one of the party's performance under the agreement

and received $7,000,000 in compensation as a result).  Accordingly, as the estoppel theory does

not apply, there is no basis for requiring Providence to arbitrate under the Agreement.

Conclusion

In view of the above, it is

ORDERED and ADJUDGED that the petition to stay arbitration is granted.

Dated: January//,2008

J.S.C.

**UNFILED JUDGMENT**
nis Judgment has . . . . . . the County Clerk
and notice of entry . . . . . . . . . . thereon. To
obtain entry, cou . . . . . . . . . . . ative must
appear in person at . . . . . . . . . Desk (Room
119)

8