UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

KIMBERLY STEEL,

               Plaintiff,

        - v -

WATCH HILL MANAGEMENT CORP.,
WATCH HILL INVESTMENT PARTNERS L.P.
PROVIDENCE INVESTMENT MANAGEMENT,
LLC and RUSSELL JEFFREY,

               Defendants.
-------------------------------------------------------------x

Case No.08-cv-01698 (GBD)

**AFFIDAVIT OF
KIMBERLY STEEL IN
OPPOSITION TO MOTION
TO DISMISS OR TO
TRANSFER VENUE**

STATE OF IDAHO      )
                    ) ss.:
COUNTY OF _Blaine_  )

      KIMBERLY STEEL, being duly sworn, deposes and says:

      1.    I am the Plaintiff ("Steel") in this action and submit this affidavit in opposition to the motion by Defendants Providence Investment Management, LLC ("Providence") and Russell Jeffrey ("Jeffrey") to dismiss the Complaint or, in the alternative, to transfer venue to the United States District Court for the District of Rhode Island.

      2.    This action was properly commenced in this district and the motion should be denied in all respects.

      3.    The facts giving rise to this action are set forth in the Complaint and only certain relevant portions will be summarized in this Affidavit. A copy of the Complaint is annexed to the Jeffrey Affidavit as Exhibit A.

      4.    As of February 8, 1995, Steel entered into an Employment Agreement with Watch Hill Management Corp., a New York Corporation ("WHM") (the "Employment Agreement"). The introductory clauses of the Employment Agreement state in part that "WHM provides management services to Watch Hill Fund L.P. (the

1

'Partnership'), a <u>New York Limited Partnership</u> whose General Partner is Watch Hill Investment Partners L.P. (the "General Partner"), a <u>New York Limited Partnership</u> that is an affiliate of WHM and shares its office address".[*]

5.    The introductory clauses of the Employment Agreement further provided that I was retained to "provide services for WHM, the General Partner and the Partnership on the terms and conditions set forth in this Agreement, and Steel is willing to undertake employment, and the <u>General Partner is willing to guarantee WHM's obligations to Steel to induce Steel to undertake employment</u>, upon these terms and conditions".

6.    The Employment Agreement is signed by WHM and guaranteed by Watch Hill Fund L.P. and by its individual General Partners, Russell J. Jeffrey and David J. Weisberger.  The guaranty states in part that "The undersigned [Watch Hill Investment Partners L.P., Russell Jeffrey, General Partner] . . . hereby guaranties the full and prompt payment and all of WHM's obligations to Steel under this Agreement and consents in advance and agrees that the validity of this guaranty and the undersigned's liability hereunder shall not be impaired, released or terminated by any amendment to or change in this Agreement (and any such amendment or change shall be included in and covered by this guaranty)." (Complaint, ¶ 15).

7.    Section 3 (b) of the Employment Agreement provides in part:

"As a bonus for services in soliciting and obtaining investors for the Partnership, WHM agrees to pay Steel in perpetuity a quarterly bonus based upon the amount of investments in the Partnership by limited partners who are introduced by Steel to the Partnership ("Referred Limited Partners") calculated in the manner hereinafter set forth in this paragraph".

---

[*] All emphasis supplied.

8.      Section 3 (b) of the Employment Agreement defines Referred Limited

Partners as follows:

"Referred Limited Partners" shall include any limited partners (or persons or entities having an interest in a limited partner) from among the following: (i) any person or entity introduced by Steel to the General Partner or the Partnership (or any subsidiary, affiliate, successor or assign of the General Partner or Partnership) from time to time during or after the termination of her employment; (ii) any relative, subsidiary, affiliate, successor or assign of any such person or entity introduced by Steel; and (iii) any person or entity (or relative, subsidiary, affiliate, successor or assign thereof) introduced to the General Partner or the Partnership by any person or entity (or relative, subsidiary, affiliate, successor or assign thereof) introduced by Steel. Any objection the General Partner or WHM may have to the categorization of any person or entity as someone introduced by Steel must be made in writing and received by Steel within 5 business days of disclosure to the General Partner of the name; failure to make such timely objection shall conclusively establish the General Partner's agreement to accept and treat such person or entity as introduced by Steel.

In the event the <u>General Partner or any affiliate thereof establishes, acts as general partner to, manages, operates or controls another securities investment partnership, securities investment company, securities investment fund or securities investment account,</u> Steel's bonus computation hereunder will, in addition to the capital accounts of Referred Limited Partners in the Partnership, include and be based, <u>in addition, on the capital accounts of Referred Limited Partners in any such other securities investment partnership, securities investment company, securities investment fund or securities investment account."</u> (Complaint, ¶ 1).

9.      During the term of my employment, I solicited and obtained Referred

Limited Partners for the Watch Hill Fund L.P. funds as provided for in the Employment

Agreement. Each investor, their classification as a Referred Limited Partner, as well as

each investment was approved prior to any investment being accepted into any fund.

(Complaint, ¶ 18).

10.      On or about December, 2002, Jeffrey left Watch Hill. However, pursuant

to the terms of the Employment Agreement, Mr. Jeffrey's leaving Watch Hill did not

relieve him of his liability to Steel. (Complaint, ¶ ¶ 23 and 27).

11.      On January 28, 2004, my employment by Watch Hill was terminated.

However, pursuant to Section 5 of the Employment Agreement, the obligations to pay the

bonus payments to me or my designee pursuant to Section 3 (b) continued in perpetuity

as long as Referred Limited Partners invested in funds in which Watch Hill and/or Jeffrey had an interest in. Section 5 of my Employment Agreement states in part: "Upon termination of Steel's employment under this Agreement . . . WHM's obligation to pay Steel or Steel's designee the bonus payment provided pursuant to Section 3 (b) above will nevertheless continue in perpetuity . . ." (Complaint, ¶ ¶ 19 and 20).

12.    Subsequent to Jeffrey leaving Watch Hill, he formed Providence, which is engaged in substantially the same business as Watch Hill. Thereafter, Providence and/or Jeffrey solicited and/or accepted investments from Steel Referred Limited Partners who had invested with Watch Hill funds while Jeffrey was a General Partner. (Complaint, ¶ ¶ 23 and 24).

13.    Providence and Jeffrey have failed and refused to pay the bonus due to me based upon Steel Referred Limited Partners investing in Providence funds. (Complaint, ¶ ¶ 27 and 28).

14.    I have been advised by Steel Referred Limited Partner Andrew Ho, a New York resident, that his companies were the first and largest investors in Providence having invested at least $60,000,000 in Providence funds.

15.    A substantial number of the Referred Limited Partners were residents of and/or had their companies in New York. Upon information and belief, a number of those Steel Referred Limited Partners left Watch Hill and invested in Providence funds. (Complaint, ¶ 26).

16.    The Employment Agreement in Section 7 (a) provides that it:

> "Shall be <u>construed and interpreted in accordance with the laws of the State of New York.</u> Any dispute shall be submitted to binding arbitration in <u>New York, New York</u> under the then prevailing rules of the American Arbitration Association . . ."

17.    I initially commenced an Arbitration before the American Arbitration Association for the relief sought in this action. However, Providence and Jeffrey brought an action in the <u>New York State Supreme Court</u> to stay that Arbitration. Honorable Joan A. Madden, J.S.C. granted the stay and found that Providence and Jeffrey were not required to submit to Arbitration. (A copy of Justice Madden's Decision is annexed to the Jeffrey Affidavit as Exhibit B).

18.    Significantly, Providence and Jeffrey chose the forum of New York County, New York and not Rhode Island for their Order to Show Cause to Stay Arbitration and, in that proceeding, did not reserve the right to object to New York as the proper jurisdiction nor assert that New York was an improper jurisdiction or venue to hear my claims against them.

19.    Annexed hereto as Exhibit "1" is the Providence Investment Management promotional literature. Although Mr. Jeffrey in Paragraph 10 of his Affidavit states "that Providence does not regularly do business, or engage in a systematic or continuous course of business, in New York" the Providence promotional literature contradicts that claim:

 a. Pages 9 and 10 list Providence's "Prime Broker" as Bear Stearns, a New York securities firm;

 b. The "Approved Counterparties", to wit the companies that Providence transacts business, listed on Page 9 include Citibank, Goldman Sachs, JP Morgan, Lehman Brothers, Merrill Lynch, Morgan Stanley, Washington Mutual and several other New York securities institutions;

 c. Page 10 lists the New York law firm of Kleinberg, Kaplan, Wolff & Cohen as its "Legal Representative". Annexed hereto as Exhibit 2 is the Martindale Hubbell listing of the offices and attorneys in that firm. The firm's sole office is at 551 Fifth Avenue, New York, New York and although all of the thirty-seven attorneys in that firm are admitted in the State of New York, none are admitted to practice in Rhode Island;

d.      Page 10 lists the New York accounting firm of Lipsky Goodkin as its "Auditor". Lipsky Goodkin has its only office at 120 West 45th Street, New York, New York;

e.      Page 14 lists Raymond Yu as the Senior Portfolio Manager of Providence. He is the second most senior officer of Providence and is responsible for the critical task of the day to day portfolio management of the Providence funds. Mr. Yu, the former associate portfolio manager of Watch Hill, resides in Oyster Bay, New York, which is almost 200 miles from Providence, Rhode Island. Mr. Yu lists his office telephone number as 516-822-5458. This area code is used for Nassau County, New York. I telephoned Providence on May 21, 2008 and asked for Mr. Yu. I was told that "he is at his New York office and can be reached at 516-822-5458." Mr. Yu's email signature, home address and MapQuest travel directions from Oyster Bay, NY to Providence, RI are annexed hereto as Exhibit 3. Mr. Yu performs virtually all of his duties for Providence from his Oyster Bay, New York home which according to Map Quest is a driving distance of 118.12 miles with an estimated travel time of 3 hours and 38 minutes.

20.     Mr. Jeffrey fails to advise the Court that, in addition to being the CEO, Principal and Chief Investment strategist of Providence, he is a Senior Vice President and Chief Investment Officer for American Capital Agency Corporation, Vice President of American Capital Agency Management, LLC and Senior Vice President and Managing Director of American Capital. In addition, Raymond Yu is a Vice President of American Capital Agency Management, LLC and a Vice President and Principal of American Capital. (A copy of the American Capital Agency Corp. biographies of Mr. Jeffrey and Mr. Yu are annexed hereto as Exhibit 4).

21.     According to their website, American Capital maintains offices in New York and Maryland and does not have a Rhode Island office.

22.     Annexed hereto as Exhibit 5 is an excerpt from American Capital Agency Corp. Securities and Exchange Commission filing No. 333-149167 filed on February 11, 2008. That filing states that "Mr. Jeffrey has headed American Capital's RMBS Investment Team." The prospectus is for an Offering of $400,000,000 for a REIT which will be managed by a team which is headed by Mr. Jeffrey and includes Mr. Yu. The

Underwriters for this Offering which was priced on May 14, 2008 are Citigroup Global Markets and Merrill Lynch & Co., two New York securities firms. There can be little doubt that Mr. Jeffrey has had and continues to have substantial New York contacts and activities in connection with that Offering.

23.    It is of further significance that Providence's business, like that of Watch Hill, is conducted virtually exclusively over the telephone, internet, overnight delivery and U.S. Mail. This allows Providence and Jeffrey to conduct their New York-centered Mortgage Backed Securities business from offices in Providence, Rhode Island and Oyster Bay, New York. The Mortgage Backed Securities business originated in New York City, and the major Wall Street firms who trade these securities have their principal place of business in New York.

24.    From the foregoing, it is clear that both Mr. Jeffrey and Providence conduct virtually all of their business and enter into contracts for their mortgage-backed securities funds in New York and within this judicial district. Furthermore, the acceptance of investments from New York based Steel Referred Limited Partners without paying my agreed commission is the commission of a tortious act within the State of New York.

25.    The true facts concerning Providence and Jeffrey's business activities contradict the claims made by them in this motion. Clearly, the defendants in a multitude of ways "avail themselves of the benefits and privileges of doing business in New York." The facts also meet the "simple and pragmatic test" used to determine that this case should remain in this Court.

26.    The Employment Agreement, pursuant to which this action has been brought, is governed by the laws of the State of New York and calls for arbitration in the County and State of New York. Although it has been found that neither Jeffrey nor

Providence can be required to arbitrate this dispute, the venue remains in New York, New York.

27.    It is of further significance that the other two defendants, Watch Hill Management Corp. and Watch Hill Investment Partners, L.P., maintain their principal and exclusive place of business and records relating to Steel Referred Limited Partners within this judicial district in Larchmont, New York.  The liability of Jeffrey and Providence stems from Jeffrey's relationship with Watch Hill.

28.    It is respectfully submitted that Providence and Jeffrey are seeking to transfer venue from New York to delay this case and make the process more inconvenient and costly to me and the two Watch Hill defendants.

29.    Although this affidavit clearly shows that jurisdiction and venue are proper in this Court, if this Court determines that the New York contacts are insufficient, it is respectfully requested that a determination of jurisdiction and venue be stayed pending discovery on that issue.

WHEREFORE, it is respectfully requested for the reasons set forth herein that the motion by Providence Investment Management, LLC and Russell Jeffrey be denied in all respects.

Kimberly Steel

Sworn to before me this
23__ day of May, 2008

Notary Public
S:\MHD\Steel v. Russell Jeffrey\Legal\Affidavit of Kim Steel.doc

YULIANA VARELA
NOTARY
PUBLIC
STATE OF IDAHO

# EXHIBIT 1

Strictly Confidential

# PROVIDENCE INVESTMENT MANAGEMENT

Providence, Rhode Island

## The Providence MBS Funds

### March 2007

See Important Disclaimers on Page 2

# Disclaimers

- The information contained herein regarding each of the investment funds managed by Providence Investment Management, LLC (the "Funds") has been prepared solely for informational purposes and is not an offer to buy or sell or a solicitation of an offer to buy or sell any limited partnership interests or shares in any Fund or to participate in any trading strategy. If any offer of limited partnership interests or shares is made, it shall be pursuant to a definitive Private Placement Memorandum prepared by or on behalf of the relevant Fund which would contain material information not contained herein and which shall supersede this information in its entirety. Any decision to invest in limited partnership interests or shares described herein should be made after reviewing the definitive Private Placement Memorandum for the relevant Fund, conducting such investigations as the investor deems necessary and consulting the investor's own investment, legal, accounting, and tax advisors in order to make an independent determination of the suitability and consequences of an investment in the Fund.

- This presentation and its contents are proprietary information of Providence Investment Management, LLC, the general partner and/or investment manager of each Fund, and any reproduction of this information, in whole or in part, without the prior written consent of Providence Investment Management, LLC is prohibited. Additional information is available from Providence Investment Management, LLC upon request. Neither Providence Investment Management, LLC nor its affiliates is acting as your advisor or agent.

- Hedge fund investing is speculative and may involve substantial investment, liquidity, derivative, and other risks. Hedge funds can be leveraged and their performance results can be volatile. Hedge funds, such as the Funds, are not subject to the same regulatory requirements as mutual funds and are not required to provide periodic pricing or valuation information to investors. Past performance is no indication of future results. There is no secondary market for the investors' interest in any Fund nor is one expected to develop. The Funds' high fees and expenses may offset the Funds' profits. An investor could lose all or a substantial amount of his or her investment.

PROVIDENCE INVESTMENT MANAGEMENT
Providence, Rhode Island

2

# Mission Statement

*Providence Investment Management, LLC ("PIM") is a private investment management company with a focus in fixed income relative value strategies and a core emphasis on the Mortgage-Backed Securities ("MBS") market. Our mission is to...*

...provide superior long-term, absolute returns through discriminate security selection and rigorous risk management. The investment team strives to create and manage a portfolio of mortgage cash flows cheap to their intrinsic value through extensive fundamental and technical analysis to generate returns that have little correlation to the level of interest rates or major market indices. Finally, a novel fee structure is employed that serves to better align manager and investor interests.

PROVIDENCE INVESTMENT MANAGEMENT
Providence, Rhode Island

3

# Superior Long-Term Performance

*Russ Jeffrey has compiled a strong performance record managing MBS hedge funds[1][2]*

| | 1994 | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2004 | 2005 | 2006 | 2007 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jan | - | 4.78% | 2.23% | 1.86% | -3.74% | 2.95% | 0.31% | -0.89% | 1.61% | - | -0.76% | 0.23% | 0.85% |
| Feb | - | 3.16% | 8.72% | 3.69% | 1.40% | 2.60% | 0.52% | -1.05% | 2.44% | - | 0.67% | -7.93% | 0.08% |
| March | - | 4.93% | 1.63% | 0.78% | 0.57% | 1.58% | 1.27% | 1.16% | 0.62% | 2.66% | 0.55% | 1.00% | - |
| April | 6.58% | 3.50% | 2.75% | 1.26% | -0.78% | 2.19% | 1.36% | 2.63% | 2.71% | 1.66% | 0.61% | 1.67% | - |
| May | 7.52% | 6.40% | 5.77% | 1.72% | 0.11% | 1.28% | 0.12% | 2.22% | 2.76% | 2.30% | 0.46% | 1.37% | - |
| June | 6.50% | 5.47% | 0.87% | 3.22% | -6.43% | 1.19% | 1.65% | 0.44% | 2.03% | 0.25% | -0.40% | 0.25% | - |
| July | 7.11% | 2.66% | 2.21% | 0.94% | 0.28% | 2.24% | 2.09% | 0.83% | 2.33% | 0.91% | 0.70% | 1.11% | - |
| Aug | 6.16% | 4.21% | 6.58% | 1.24% | -0.54% | 0.79% | 1.08% | 0.13% | 2.18% | 1.82% | 0.47% | 0.34% | - |
| Sep | 6.29% | 8.64% | 8.73% | 1.84% | -14.33% | 2.11% | 1.73% | 1.10% | 0.79% | 0.67% | 0.13% | 0.86% | - |
| Oct | 7.39% | 3.97% | 1.18% | 1.08% | 0.18% | 3.25% | 1.01% | 0.49% | 0.81% | 1.75% | 1.13% | 0.62% | - |
| Nov | 4.77% | 0.71% | 0.65% | 0.14% | 0.13% | 0.66% | -1.19% | 1.81% | 0.62% | 0.05% | 0.32% | -2.05% | - |
| Dec | 6.19% | 4.86% | 5.84% | 0.86% | -3.91% | 0.60% | 0.08% | 3.25% | 2.77% | 0.00% | -1.59% | -0.62% | - |
| Total | 76.21% | 68.08% | 58.09% | 20.23% | -24.86% | 23.61% | 10.46% | 12.70% | 23.93% | 12.83% | 2.28% | -3.47% | 0.93% |

## AVERAGE ANNUAL RETURN (1994 – 2006) = 23%

PROVIDENCE INVESTMENT MANAGEMENT
Providence, Rhode Island

*Note: Returns from 1994 through 2002 for Watch Hill; returns for 2004 & 2005 for PIM; also see notes 1 & 2 on page 15 for further details*

4

# Investment Process

PIM utilizes a disciplined, proven investment approach that seeks to construct a portfolio of undervalued mortgage assets while effectively monitoring and managing risk.



**Fundamental Analysis**
- Macroeconomic trends
- Yield curve projections
- Interest rate volatility
- Macro MBS trends
- Prepayment projections

**Security Analysis**
- Prepayment analysis
- Interest rate analysis
- Effective duration
- Convexity
- OAS analysis

**Hedging**
- Interest rate risk
- Prepayment risk
- Volatility risk
- Basis risk
- Liquidity risk

**OPTIMAL ASSET SELECTION & PORTFOLIO CONSTRUCTION**

PIM employs sophisticated analytics in conjunction with its extensive market experience to identify opportunities and manage portfolio risk.

*See Notes 2 &3 on page 15*

PROVIDENCE INVESTMENT MANAGEMENT
Providence, Rhode Island

5

# Why MBS?

## A Large and Dynamic Market

➤ As of the year-end 2006, MBS represented the largest fixed income market at over $9 trillion, over $3 trillion larger than the next largest market (Corporates)

➤ Of the $9 trillion MBS market, only approximately $15 billion, less than 1%, represents Hedge Fund capital

| HFN Hedge Funds | Long/Short Equity Funds | Mortgage Funds |
|---|---|---|
| 4,390 | 1,524 | 28 |

*Source: HedgeFund.net*

➤ Of the 4,390 active Hedge Funds in the HedgeFund.net Aggregate Average, only 28 are Mortgage Funds while 1,524 are Long / Short Equity Funds

*See Note 1 on page 15*

**PROVIDENCE INVESTMENT MANAGEMENT**
Providence, Rhode Island



**Fixed Income Markets ($ in billions) (3)**

MBS, Corporates, Treasuries, Money Markets, Munis, Agencies, Asset Backed

2001 2002 2003 2004 2005 2006

*Source: BondMarket Association*

6

# Investment Universe



**ASSETS**
- Agency & Private Label CMOs
- Trust IO/PO
- Agency Fixed Rate Pass-Throughs

**HEDGES**
- Agency Fixed Rate Pass-Throughs
- Treasuries
- Futures / Options

**PIM Portfolio**

**FINANCING**
- Repurchase Agreements
- Forward Rate Agreements
- Interest Rate Swaps

# Month-End Valuation

**External Pricing**

**Internal Pricing**

- **Survey multiple major Wall Street counterparties**

- **Utilize third party vendors (i.e. IDC, Reuters)**

- **Extract the high, low, and mean prices from these sources**

- **Continuously monitor trading activity in similar securities**

- **Track dealer inventory offerings**

- **Evaluate external range of prices in the context of empirical trading activity**

PIM

*In no case, will a bond be priced lower than the low or higher than the high of the prices submitted by third party sources*

PROVIDENCE INVESTMENT MANAGEMENT
Providence, Rhode Island

8

# Approved Counterparties

## Prime Broker: Bear Stearns

- Bank of America
- Citibank
- Countrywide
- Credit Suisse
- Deutsche Bank
- Goldman Sachs
- Greenwich Capital Markets
- JP Morgan

- Lehman Brothers
- Merrill Lynch
- Morgan Stanley
- Nomura
- UBS
- Washington Mutual

PROVIDENCE INVESTMENT MANAGEMENT
Providence, Rhode Island

9

# Fund Specifics

| | |
|---|---|
| Minimum Investment: | $1,000,000 |
| Entry: | Monthly |
| Exit: | Quarterly |
| Lock-Up: | One Year |
| Management Fee: | 1.5% |
| Performance Fee: | 20% (with 50% deferred and High Water Mark) |
| Auditor: | Lipsky Goodkin |
| Administrator: | UBS Fund Services (Cayman) Ltd. |
| Prime Broker: | Bear Stearns |
| Legal: | Kleinberg, Kaplan, Wolff & Cohen |

PROVIDENCE INVESTMENT MANAGEMENT
Providence, Rhode Island

10

# Organizational Structure



12

## Summary

- 9 professionals with over 100 years of fixed income trading, structuring, and portfolio experience

- Solid long-term investment track record

- Significant investment in state-of-the-art analytics

- Focus on client service with emphasis on transparency and partnership

- Unique performance fee structure with 50% annual deferment designed to better align manager and partner interests

PROVIDENCE INVESTMENT MANAGEMENT
Providence, Rhode Island

# The PIM MBS Portfolio Management Team

**Russell J. Jeffrey – *CEO, Principal, & Chief Investment Strategist***



Mr. Jeffrey is responsible for portfolio management, risk management and trading as well as general management and oversight of PIM. Prior to founding PIM, Mr. Jeffrey was co-founder and investment manager of the Watch Hill group of investment funds from 1994 to 2002. At Watch Hill, Mr. Jeffrey was responsible for managing the trading activities of domestic and offshore private investment funds which employed a fixed income oriented investment strategy. Prior to Watch Hill, Mr. Jeffrey was a Managing Director and department head of Mortgage-Backed Securities Trading and Sales for Prudential Securities, Inc. During his tenure at Prudential Securities, Inc. he also served on the firms' Operating Council, Risk Management Committee as well as on the PSA's Trading Practices Committee. In addition to overseeing the primary issuance of over $50 billion of Real Estate Mortgage Investment Conduits (REMIC), Stripped Mortgage Backed Securities (MBS) and Collateralized Mortgage Obligations (CMO), Mr. Jeffrey was personally responsible for the creation of several innovative securities including FHLMC GOLD MACS and the JUMP Z with a combined issuance of greater than $150 billion. Prior to working at Prudential Securities, from 1988 to 1989 Mr. Jeffrey was a Principal of L.F. Rothschild and Co. where he was responsible for the firm's mortgage operations. While at Rothschild, Mr. Jeffrey developed a market niche in mortgage derivative products; piloting the firm to a market leadership position in underwriting. From 1985 to 1988, he traded FHLMC/FNMA collateral at Merrill Lynch. Mr. Jeffrey was born and raised in Providence, Rhode Island and graduated in 1981 from the University of Rhode Island.

# The PIM MBS Portfolio Management Team (continued)

### Raymond R. Yu – *Portfolio Manager*

Prior to joining PIM, Mr. Yu served as an Associate Portfolio Manager for Watch Hill Investment Partners from 1995 to 2004, a group of domestic and offshore investment funds that employed a fixed income oriented strategy. At Watch Hill, he assisted in running the mortgage derivative portfolio. From 1989 to 1994, Mr. Yu worked at Prudential Securities. During his time at Prudential, he was Head of CMO Structuring and a derivative trader. Prior to working on Wall Street, Mr. Yu attended New York University where he graduated in 1989 with a Bachelor of Science degree in Finance and International Business. He holds Series 3 and Series 65 licenses.

### Edward D. Smith – *Portfolio Manager*

Prior to joining PIM, Mr. Smith served as an Associate Portfolio Manager for Watch Hill Investment Partners from 2000 to 2005, a group of domestic and offshore investment funds that employed a fixed income oriented strategy. From 1995 to 1998, Mr. Smith was a Managing Director in the MBS Sales Group at Merit Capital. Prior to working at Merit Capital, Mr. Smith was a Vice President of MBS Sales at Nikko Securities. From 1990 to 1993, he served as a MBS derivative trader at Prudential Securities.

### Richmond Jeffrey – *Chief Financial Officer*

Prior to joining PIM, Mr. Jeffrey was the CFO for Aurora Investment Management from 2001 to 2003, a private investment partnership based in Rhode Island. From 1986 to 2001, Mr. Jeffrey was the Chief of Staff and Director of International Finance at GTECH Corporation. In this position, he was responsible for all financial aspects of a majority of GTECH's business outside of the U.S. Additionally, Mr. Jeffrey acted as the main liaison between regional management and the Executive Management Staff at GTECH. A native of Rhode Island, Mr. Jeffrey earned his undergraduate degree in 1980 and his MBA in 1990, both from the University of Rhode Island.







# Notes

1. This information is derived from a third party without independent verification by PIM and is believed by PIM to be reliable. However, neither PIM nor any of its affiliates makes any representation as to the accuracy or completeness of such information or accepts any liability arising from its use. Any decision to invest in the investment vehicles managed by PIM should be made after reviewing the relevant Private Placement Memorandum, conducting such investigations as the investor deems necessary and consulting the investor's own investment, legal, accounting, and tax advisors in order to make an independent determination of the suitability and consequences of an investment in the securities.

2. Past performance is not indicative of future performance and no representation is made that an investor will or is likely to achieve similar results to these shown. Returns shown reflect the record of Russ Jeffrey during his tenure at Watch Hill Partners. These returns were generated with Russ Jeffrey serving as the primary Portfolio Manager from 1994 through 2001. He managed the portfolio jointly with Ken Atlas during 2002. The foregoing should not be deemed an offer to sell or a solicitation of an offer to buy an interest in any fund unless accompanied or preceded by such Fund's current Private Placement Memorandum. Performance is shown net of fees and is audited. Hedge fund investing carries certain risks such as illiquidity and volatility. Please refer to the Fund's Offering Memorandum for more information. The results shown reflect reinvestment of dividends and earnings.

3. Past performance is not indicative of future performance and no representation is made that an investor will or is likely to achieve similar results to these shown. Returns shown for 2004 and 2005 reflect the record of Russ Jeffrey at PIM. He managed the portfolio jointly with Robert Pearsall from inception in 2004 through February 2006. The 2004 net return of 13% represents the 10 months beginning March 1, 2004 and ending December 31, 2004 for the Providence MBS Opportunities Fund, LP. March 1, 2004 was the inception date of the Providence MBS Opportunities Fund, LP. As of July 31, 2005, the Providence MBS Opportunities Fund, LP was closed and combined with the Providence MBS Fund, LP. The 2005 net return of 2% represents the full-year return for the Providence MBS Fund, LP and the Providence MBS Offshore Fund, Ltd. The net rates of return reflect the percentage change in the market value of the assets of each Fund for the periods indicated. The returns are based on $1,000,000 invested as of the inception date of the Fund. Returns to investors admitted after the inception date of the Fund may differ from the stated returns above. Performance is shown net of fees and is audited. Hedge fund investing carries certain risks such as illiquidity and volatility. Please refer to the Fund's Offering Memorandum for more information. The results shown reflect reinvestment of dividends and earnings.

PROVIDENCE INVESTMENT MANAGEMENT
Providence, Rhode Island

15

# EXHIBIT 2

 **LexisNexis®**

Print   Close Window

## Offices: Kleinberg, Kaplan, Wolff & Cohen, P.C.

**View Offices for:**
-- All Practice Areas--

New York, New York (Main Office)    551 Fifth Avenue, New York, New York 10176

**View Offices for:**
-- All Practice Areas--

New York, New York (Main Office)    551 Fifth Avenue, New York, New York 10176

*Source: Martindale-Hubbell*

Print   Close Window



| Home | Our Firm | Our Attorneys | Our History | Newsletters | Articles | Contact Us |

## Our Attorneys

## MEMBERS

**FREDRIC A. KLEINBERG.** Admitted to bar, 1968, New York. Education: University of Miami (B.B.A., 1964); Georgetown University (J.D., 1967). Omicron Delta Kappa. Member, Iron Arrow. Advisor, Eugene and Estelle Ferkauf Foundation, 1972-1998. Trustee: Board of Governors of the Graduate Schools of Yeshiva University, 1973-1977; Children's Medical Center of New York, 1973-1986; The Jewish Braille Institute of America, 1976-1979; Benjamin N. Cardozo School of Law, 1977-1987; Dartmouth College Medical School, 1979-1986; The Nassau Center, 1983-1986. Associate Trustee, Long Island Jewish Hillside Medical Center, 1978-1983. Trustee, Daytop Village Foundation, 1992-1997. Member, International Council of The Salk Institute of Biological Sciences, 1983-1999. Practice Areas: Corporate Law; Mergers and Acquisitions; Investment Management; Real Estate. Email: FKleinberg@KKWC.com

**MYRON KAPLAN.** Admitted to bar, 1970, New York. Education: Columbia University (A.B., cum laude, 1966); Harvard University (J.D., 1969). Co-author: "Purchasing Recycled Paper," 58 American Bar Association Journal 851, August, 1972. Member, Board of Directors, Public Action Coalition on Toys, 1976-1983. Trustee, 1979-1991, 1993—, Member, Executive Committee, 1993—, Vice Chairman, 1995—, JBI International (formerly The Jewish Braille Institute of America). Trustee, 1991—, Member, Executive Committee, 1992—, and Chairman, Exhibition Committee, 1992-1999, The Children's Museum of Manhattan. Member: Board of Directors 1993—, Executive Committee, 1996-1999 and Chairman, Compensation Committee, 1996-1999, Trans World Airlines, Inc. Board of Directors and Chairman, Compensation Committee, 2002-2007, Kitty Hawk, Inc. Board of Directors, 2002-2003, SAir Group Finance (USA) Inc. Lecturer: Hedge Fund Services Seminar, 1994, Managed Account Reports, Inc., Conference on Alternative Investments, 1995, and Institute for International Research Conference on Financial Products, 1995. Member: American Bar Association (Committees on Sherman Act, 1981-1985 and Franchising, 1981-1985, Anti-trust Law Section; International Law Section). Named a Super Lawyer in 2006 and 2007. Practice Areas: Corporate Law; Securities; Investment Management; Trade Regulation; Mergers and Acquisitions. Email: MKaplan@KKWC.com

**NORRIS D. WOLFF.** Admitted to bar, 1970, New York; 1971, U.S. Court of Appeals, Second Circuit and U.S. District Court, Southern and Eastern Districts of New York; 1980, U.S. District Court, Eastern District of Wisconsin; 1981, U.S. Court of Appeals, Third Circuit; 1984, U.S. Supreme Court, U.S. Court of International Trade and U.S. Court of Appeals, Sixth Circuit; 1988, U.S. Court of Appeals, Seventh Circuit; 1990, U.S. District Court, District of Arizona; 1991, U.S. District Court, Northern District of New York. Education: University of Pennsylvania (B.S., 1966); Georgetown University (J.D., 1969). Member, Executive Board, Law and Policy in International Business, 1968-1969. Author: "National Banks and the Vanishing Venue Defense," 97 Banking Law Journal 245, 1980; "Counterclaims Against Absent Class Members," 98 Banking Law Journal 47, 1981; "Foreign Insolvency Proceedings and the American Bank: The Section 304 Problem," 100 Banking Law Journal 4, 1983; "Letters of Intent, Preliminary Agreements, and Binding Acquisition Agreements," 111 Banking Law Journal 292, 1994; "Trial Practice: Videoconferencing," Federal Bar Council News, October 2002. Law Clerk, National Advisory Commission on Civil Disorders, 1968. Member, Panel of Arbitrators, National Association of Securities Dealers, Inc., 1984—. Member: American Bar Association; Federal Bar Council. Practice Areas: Corporate Litigation; Securities Litigation; Civil Litigation;

Intellectual Property Litigation; Products Liability. Email: NWolff@KKWC.com

**JAMES R. COHEN.** Admitted to bar, 1966, New York, U.S. Tax Court and U.S. Claims Court. Education: Dartmouth College (B.A., 1963); New York University (LL.B., 1966; LL.M. in Taxation, 1967). Co-author: "Tax Efficient Investing Using Private Placement Variable Life Insurance and Annuities," The Journal of Private Portfolio Management, Winter 1999 (Vol. 2, Number 3, P. 27); Co-author: "Is Increasing Hedge Fund After-Tax Returns Using Private Placement Life Insurance and Annuities Still Viable," The Journal of Wealth Management, Fall 2004; "To Defer or Not to Defer," Private Investment Forum, First Quarter 2001; "Life Insurance for Your Hedge Funds," ReLATIVELY Speaking, ReGENERATION Partners, June 1997; "Hedge Funds in Estate Planning," Lookout Mountain, Volume 1, No. 2, April 1994; "Domestic Private Placement Life Insurance and Annuities Can Substantially Increase Hedge Fund After-Tax Returns," Hedge Views, Winter, 1998; "Increasing Hedge Fund Returns Using Insurance and Estate Planning," Private Wealth Management, 1997/1998 at 119; "Increasing Hedge Fund After-Tax Returns Through Private Placement Life Insurance," 3 Lookout Mountain Hedge Fund Review 4, 4th Quarter, 1996; "The Section 83(b) Election Is Alive and Well and Sometimes Indispensable," Taxes-The Tax Magazine, Sept., 1988. Lecturer: Hedge Fund Services Seminars, 1993 and 1994 and Foundation for Accounting Education, 1995 and 1999, Institute for Private Investors, 1994 and 1996, Hedge/MAR 1995 and 1996; U.S. Trust, "Selected Estate Planning Strategies," 1997; Montgomery Securities, "Current Tax Issues for Hedge Funds," 1997; Gerber/Taylor Spring Conference, 1998; NMS Wealth Management, 1998; "Estate Planning" for Lawline.com, 1999, internet continuing legal education course. Member: American Bar Association (Committee on Income Taxation of Estates and Trusts, 1972-1973; Real Property, Probate and Trust Law Section, 1981—). Named a Super Lawyer in 2006 and 2007. Practice Areas: Taxation; Estate Planning; Probate; International Law; Insurance. Email: JCohen@KKWC.com

**STEPHEN M. SCHULTZ.** Admitted to bar, 1975, New York. Education: State University of New York at Stony Brook (B.S., cum laude, 1971); New York University (J.D., 1974; LL.M. in Taxation, 1981). Co-author: "An Update on Hedge Funds," Business Law Today, September/October 1997 at 58; "Steps for Organizing a Broker Dealer," Private Asset Management, January 27, 1997 at 11; "Handling Hedge Funds-Navigating the Regulatory Maze," Business Law Today, May/June 1996, at 54; "Watch Out for Commodities Law Compliance," Private Asset Management, December 18, 1995, at 9. Author: "Performance-Based Fees Under the Investment Advisers Act of 1940," The Business Lawyer, February, 1984. Member: The Association of the Bar of the City of New York; American Bar Association (Section on Corporation, Banking and Business Law); New York County Lawyers' Association (Committee on Securities and Exchanges, 1978-1980). Panel of Arbitrators, American Stock Exchange, Inc., 1986—. Practice Areas: Securities; Investment Management; Corporate Law; Mergers and Acquisitions. Email: SSchultz@KKWC.com

**DAVID PARKER.** Admitted to bar, 1974, New York and U.S. District Court, Southern and Eastern Districts of New York; 1975, U.S. Court of Appeals, Second Circuit; 1985, U.S. Tax Court; 1991, U.S. Claims Court and U.S. Court of Appeals, Federal Circuit. Education: Brown University (A.B., cum laude, 1969); Yale University (J.D., 1973). Phi Beta Kappa. Visiting Lecturer in Law and Finance, William E. Simon School of Business, University of Rochester. Contributing Author: "Business Competitor Intelligence: Methods for Collecting, Organizing and Using Information," John Wiley & Sons, 1984. Member, Board of Directors, New York City Justice Project, 2006 —. Director, Legal Services for New York City, 1983—. Trustee, Horace Mann School, 2001—. Trustee and Officer, Park Avenue Synagogue, 1991—2003; Honorary Trustee and Honorary Vice President, 2003— Park Avenue Synagogue. Member: The Association of the Bar of the City of New York. Named a Super Lawyer in 2007. Practice Areas: Corporate Litigation; Commercial Litigation; Securities Litigation; Hedge Funds; Derivative Products; Emerging Markets; Bankruptcy. Email:DParker@KKWC.com

**JEFFREY S. BORTNICK.** Admitted to bar, 1983, New York; 1988, U.S. Tax Court and U.S. Claims Court; 1992, U.S. Court of Appeals, Federal Circuit. Education: Adelphi University (B.B.A., summa cum laude, 1979); New York University School of Law (J.D., cum laude, 1982;

LL.M., in Taxation, 1986). Order of the Coif; Delta Mu Delta; Chairs KKW&C's Tax Department and has been advising KKWC's clients on federal, state, local and international tax and estate planning issues for over 20 years. Mr. Bortnick frequently advises funds and investment managers on the tax issues related to fund formation, operations and investments. Eta Chi Alpha; Delta Tau Alpha. Recipient, American Jurisprudence Award in Estate Planning. Author: "Tax Management-Building Wealth, Reducing Taxes, "The PPLI Solution: Delivering Wealth Accumulation, Tax Efficiency, and Asset Protection Through Private Placement Life Insurance, February 2005; "Nonresident Partners in Hedge Funds May Avoid New York Tax on Services Performed There," Journal of Multistate Taxation, Sept./Oct. 1993. Co-author: "Is Increasing Hedge Fund After-Tax Returns Using Private Placement Life Insurance and Annuities Still Viable?" The Journal of Wealth Management, Fall 2004; "Tax Efficient Investing Using Private Placement Variable Life Insurance and Annuities," The Journal of Private Portfolio Management, Winter 1999 (Vol. 2, Number 3, P. 27); "Domestic Private Placement Life Insurance and Annuities Can Substantially Increase Hedge Fund After-Tax Returns," Hedge Views, Winter, 1998; "Increasing Hedge Fund Returns Using Insurance and Estate Planning," Private Wealth Management, 1997/1998 at 119; "Life Insurance for your Hedge Funds," ReLATIVELY Speaking, ReGENERATION Partners, June 1997; "Tax Advantages of Section 83 (b) Election Can Be Significant," 86 Journal of Taxation 39, 1997; "Increasing Hedge Fund After-Tax Returns Through Private Placement Life Insurance," 3 Lookout Mountain Hedge Fund Review 4, 4th Quarter, 1996; "The Section 83(b) Election Is Alive and Well and Sometimes Indispensable," Taxes-The Tax Magazine, Sept. 1988. Lecturer: Financial Research Associates LLC's Insurance-Based Hedge Fund Investing Seminar, December 2002; The Rodney L. White Center for Financial Research 29th Annual Seminar, The Wharton School, University of Pennsylvania, March 2000, March 2000; Foundation for Accounting Education's Investment Partnerships Conference: Advanced Topics, 1995 and 1998; Hedge Fund Services Seminar, 1994. Member: The Association of the Bar of the City of New York. Practice Areas: Taxation; Estate Planning; International Law; Insurance. Email: JBortnick@KKWC.com

**MARTIN D. SKLAR.** Admitted to bar, 1985, New York. Education: Princeton University (A.B., magna cum laude, 1981); New York University (J.D., 1984). Author: "The Corporate Indenture Trustee: Genuine Fiduciary or Mere Stakeholder?" The Banking Law Journal, January/February 1989. Member: The Association of the Bar of the City of New York; American Bar Association (Section on Business Law); Panel of Arbitrators, National Association of Securities Dealers, Inc., 1988—. Practice Areas: Corporate Law; Securities; Investment Management; Mergers and Acquisitions. Email: MSklar@KKWC.com

**JAMES R. LEDLEY.** Admitted to bar, 1973, New York; 1974, U.S. Tax Court; 1992, District of Columbia. Education: Bates College (B.A., 1969); Columbia University (J.D., 1972); New York University (LL.M., in Taxation, 1975). Harlan Fiske Stone Scholar, 1970-1972. Associate Editor, Journal of Law and Social Problems, 1970-1972. Member: The Association of the Bar of the City of New York (Committee on Trusts, Estates and Surrogates Courts, 1989-1992); New York State (Committee on Income of Estates and Trusts, Tax Section, 1975—) and American Bar Associations. Named a Super Lawyer in 2007. Practice Areas: Estate Planning; Estate Administration; Taxation. Email: JLedley@KKWC.com

**PHILIP S. GROSS.** Admitted to bar, 1988, New Jersey; 1990, New York; 1992, U.S. Tax Court. Education: College of William & Mary (B.B.A., 1983); Vanderbilt University (J.D., 1986); New York University (LL.M. in Taxation, 1989). Beta Gamma Sigma. Certified Public Accountant, New York, 1989. Co-author: "Tax Advantages of Section 83(b) Election Can Be Significant," 86 Journal of Taxation 39, 1997; "Tax Issues in Structuring Your Hedge Fund," Marcum & Kleigman LLP's Private Investment Forum, Second Quarter 2004; "Tax Planning for Offshore Hedge Funds-the Potential Benefits of Investing in a PFIC," Journal of Taxation of Investments, January 2004; "Current IRS and State Tax Litigation Issues," 52 N.Y.U. Institute Federal Taxation, Ch. 31, 1994. Member: New York State Bar Association (Tax Section, Committee on Taxation of Financial Instruments). Practice Areas: Taxation; International Taxation; Mergers and Acquisitions; Estate Planning. Email: PGross@KKWC.com

**CHRISTOPHER P. DAVIS.** Admitted to bar, 1991, New York. Education: Georgetown

University (A.B., cum laude, 1986); Syracuse University (J.D., 1989). Syracuse University Scholar. Lead Articles Editor and Symposium Editor, Syracuse University Journal of International Law and Commerce. Practice Areas: Mergers and Acquisitions; Corporate Law; Banking Law; Venture Capital; Investment Management. Email: CDavis@KKWC.com

**LAWRENCE D. HUI.** Admitted to bar, 1988, New York. Education: Dartmouth College (A.B., magna cum laude, 1982); University of Chicago (J.D., cum laude, 1986). Phi Beta Kappa. Law Clerk to Hon. E. Grady Jolly, U.S. Court of Appeals, Fifth Circuit, 1986-1987. Languages: French. Member: The Association of the Bar of the City of New York; American Bar Association. Practice Areas: Securities; Corporate Law; International Law; Derivative Products. Email: LHui@KKWC.com

**ANDREW M. CHONOLES.** Position: Managing Partner. Admitted to bar, 1988, New York. Education: Emory University (B.A., 1984); Brooklyn Law School (J.D., 1987). Member, Brooklyn Law School Journal of International Law. Member: The Association of the Bar of the City of New York. Practice Areas: Real Estate; Finance and Corporate Law. Email: AChonoles@KKWC.com

**ERIC S. WAGNER.** Admitted to bar, 1997, New York. Education: Cornell University (B.S., 1992); New York University School of Law (J.D., 1995). Member: The Association of the Bar of the City of New York. Practice Areas: Securities; Investment Management; Venture Capital. Email: EWagner@KKWC.com

**ROSS L. YUSTEIN.** Admitted to bar, 1994, New Jersey, 1995, New York. Education: Brown University (B.A., 1988); Georgetown University Law Center; (J.D., 1994). Member of the Association of the Bar of the City of New York. Practice Area: Real Estate. Email: RYustein@KKWC.com

**SHARON MARIE TOMAO.** Admitted to bar, 1997, New York. Education: Dartmouth College (B.A., 1993); Georgetown University Law Center (J.D., 1996). Current Developments Editor, Georgetown Immigration Law Journal. Author: "The Cultural Defense: Traditional or Formal?" Georgetown Immigration Law Journal, Volume 10, Number 2, Winter, 1996. Member: The Association of the Bar of the City of New York; American Bar Association. Practice Areas: Corporate Law; Securities; Investment Management; Entertainment Law. Email: STomao@KKWC.com

**ROBERT S. SCHNEIDER.** Admitted to bar, 1967, New York; 1975, U.S. District Courts, Southern and Eastern Districts of New York and U.S. Court of Appeals, Second Circuit. Education: Brandeis University (B.A., 1963); Stanford University (J.D., 1966). Member: The Association of the Bar of the City New York; New York State, Federal and American Bar Associations; Association of Life Insurance Counsel (Chairman, Company Products Committee, Securities Section, 1987-1990). Fellow, American College of Investment Counsel. Recipient, American Jurisprudence Award. Practice Area: Corporate Law; Securities Law; Insurance Law. Email: RSchneider@KKWC.com

**MAX KARPEL.** Admitted to bar, 2000, New York. Education: Yale University (B.A., 1996); New York University School of Law (J.D., 1999). Staff Editor, New York University Journal of International Law and Politics. Member: American Bar Association. Practice Areas: Corporate Law; Securities Law. Email: MKarpel@KKWC.com

## OF COUNSEL:

**MAURICE S. SPANBOCK.** Admitted to bar, 1950, New York. Education: Columbia University (B.A., 1944); Oxford University, Oxford, England; Harvard University (LL.B., 1950). Trustee,

Carnegie Council on Ethics and International Affairs, 1994—. Chairman, Board of Trustees, 1987-1992. Member, National Panel of Arbitrators, American Arbitration Association, 1966—. Member: The Association of the Bar of the City of New York (Member, Committees on: Copyright, 1965-1967; Art Law, 1977-1980, 1986-1989); American Bar Association (Chairman, Committee on Taxation, Patent, Trademark and Copyright Law, Taxation Section, 1979-1981); Practicing Law Institute (Member, Panel on Copyright, 1979). Practice Areas: Estate Planning; Probate; Entertainment Law. Email: MSpanbock@KKWC.com

**BRUCE D. STEINER.** Admitted to bar, 1976, New York, U.S. Tax Court and U.S. Claims Court; 1978, New Jersey and Florida; 1996, U.S. Court of Appeals, Third Circuit. Education: Cornell University (A.B., 1972); State University of New York at Buffalo (J.D., cum laude, 1975); New York University (LL.M. in Taxation, 1976). Author: "Logarithms, Exponents and Carryover Basis," 56 Taxes 486, August 1978; "Liabilities in Excess of Basis in Corporate Reorganizations-When Should Gain Be Recognized," 6 Journal of Corporate Taxation 39, Spring, 1979; "Estate Tax Marital Deduction Planning for Alternate Valuation," 65 Journal of Taxation 232, October 1986; "Timing of S Election Can Minimize Double Tax on Gains," 1 Corporate Taxation 57, November/December, 1988; "Federal Estate Tax Return: Considering the Alternate Valuation Date Option," Warren Gorham & Lamont Estate Planning and Administration Service, Chapter M 30; "Disclaimers: Post-Mortem Creativity," 4 Probate and Property 43, November/December 1988; "Considering the Alternate Valuation Date Option," WG&L Estate Planning, July 1989; "Where to Deduct Estate Administration Expenses," 61 The CPA Journal 6, August 1991; "New Regulations Allow More Real Estate Corporations to Become S Corporations," 71 Taxes 305, May 1993; "Pension or IRA Benefits Make Great Charitable Gifts," The Planned Giving Advisor, Summer 1994; "Jackie Onassis and Charitable Lead Trusts," 10 Bergen Barrister 6, July/August 1994; "Post Mortem Strategies to Shift Retirement Plan Assets to the Spouse," 24 Estate Planning 369, October 1997. Co-Author: "The Benefits of Charitable Remainder Trusts," 46 CLU Journal 58, November 1992; "How Best to Use the Grandfather Election for Retirement Plans," 23 Estate Planning 72, February 1996; "Avoiding A Penalty on Early Distributions From Qualified Plans and IRA Benefits," 27 Estate Planning 7, January 2000. Lecturer: Fairleigh Dickinson Tax Institute, 1986—; New Jersey Institute for Continuing Legal Education, 1986—; C.W. Post Tax Institute, 1997. Columnist and Advisory Board Member, CCH Journal of Retirement Planning, 1998—. Member: Association of the Bar of the City of New York; Bergen County, New York State, New Jersey State and American Bar Associations; The Florida Bar; Estate Planning Council; International Association for Financial Planning. Practice Areas: Taxation; Estate Planning; Estate Administration; Probate; Business Succession Planning. Email: BSteiner@KKWC.com

**ROBERT L. BERMAN.** Admitted to bar, 1978, New York; 1981, District of Columbia. Education: State University of New York at Binghamton (B.A., 1972); St. John's University (J.D., 1977). Member: New York State Bar Association. Practice Areas: Corporate Law; Securities; Mergers and Acquisitions. Email: RBerman@KKWC.com

**MATTHEW J. GOLD.** Admitted to bar, 1983, New York. Education: Yale University (B.A.,1979); the University of Pennsylvania Law School (J.D., 1982); Author: "Global Crossing and the Use of IRUs: Unsettled Questions on Their Legal Status," The Bankruptcy Strategist Vol. XIX, No. 6 (April 2002 Law Journal Newsletters); Co-Author: "Letters of Credit in Bankruptcy," (Letters of Credit Institute, 1984, 1985, 1986), "Municipal Bankruptcy," (Law and Business, 1983); Municipal Bankruptcy (Law and Business, 1983). Lecturer: Continuing Legal Education Seminars on Bankruptcy: Miami, Florida, 1999; White Plains, New York, 2001. Named a Super Lawyer 2007. Practice Area: Creditors' Rights/Bankruptcy. Email: MGold@KKWC.com

**JODI F. KRIEGER.** Admitted to the bar, 1988, U.S. District Court, District of New Jersey and the U.S. District Court, Eastern District of New York. Education: State University of New York at Binghamton (B.A., 1985); Brooklyn Law School (J.D., 1988); New York University School of Law (LL.M. in Taxation, 2000). Member: New York State Bar Association, Trusts & Estates Law Section. Practice Area: Estate Planning and Administration. Email: JKrieger@KKWC.com

**EUCHUNG UNG.** Admitted to bar, 1990, England & Wales;1994, New York; 2003, Connecticut. Education: University of London, England (LL.B., with honors, 1989) Fordham University (LL.M., 1991); Georgetown University (J.D., 1994). Practice Areas: Real Estate. Email: EUng@KKWC.com

## ASSOCIATES:

**JAMES I. RAPP.** Admitted to bar, 1999, New York. Education: Duke University (A.B., Economics, 1994); Fordham University School of Law (J.D., 1998). Associate Editor, Fordham Intellectual Property, Media and Entertainment Law Journal. Member: New York State Bar Association; The Association of the Bar of the City of New York; New York County Lawyer's Association. Practice Areas: Corporate Law; Securities; Investment Management; Mergers and Acquisitions. Email: JRapp@KKWC.com

**JASON P. GRUNFELD.** Admitted to bar, 2002, New York. Education: University of Wisconsin (B.A., 1998); George Washington University (J.D., 2001). Member: The Association of the Bar of the City of New York. Practice Areas: Corporate Law; Investment Management; Mergers and Acquisitions; Securities. Email: JGrunfeld@KKWC.com

**JAMIE L. NASH.** Admitted to bar, 2002 , New York. Education: New York University - Leonard N. Stern School of Business (B.S., summa cum laude, 1998); Fordham University School of Law (J.D., 2001). Staff Editor, Fordham Law Review. Member: New York State Bar Association; American Bar Association. Practice Areas: Corporate Law; Investment Management; Mergers and Acquisitions; Securities. Email: JNash@KKWC.com

**KELLY E. ZELEZEN.** Admitted to the bar, 2004, New York. Education: Washington and Lee University (B.A., cum laude, 1999), Rutgers School of Law-Newark (J.D., order of the coif, 2003); Rutgers Law Review, Research Editor. Practice Area: Corporate Law. Email: KZelezen@KKWC.com

**MARC R. ROSEN.** Admitted to bar, 1999, New York; U.S. District Court, Southern and Eastern Districts of NY; 2000, New Jersey, District of Columbia, U.S. District Court, District of New Jersey. Education: University of Michigan at Ann Arbor (B.A., 1995); Yeshiva University, Benjamin N. Cardozo School of Law (J.D., 1998); Senior Articles Editor, Cardozo Journal of International and Comparative Law. Author: "The Alien Tort Claims Act and the Foreign Sovereign Immunities Act: A Policy Solution," 6 Cardozo J. Int'l & Comp. L. 461 (1998). Practice area: Corporate, Commercial and Securities Litigation. Email: MRosen@KKWC.com

**DAVID Y. PARK.** Admitted to bar, 2004, New York. Education: University of Pennsylvania, (B.A., 1998, M.S., 1999); University of Pennsylvania School of Law (J.D., 2003). Member: New York State Bar Association, The Association of the Bar of the City of New York, Asian American Bar Association of New York. Practice area: Real Estate. Email: DYPark@KKWC.com

**DANIELLE ROTHMAN.** Admitted to bar, 2008, New York; Education: Cornell University (B.S., 2002); Harvard Law School (J.D. 2005). Practice area: Corporate Law, Securities, Investment Management, Mergers and Acquisitions. Email: DRothman@KKWC.com

**IVANA VUJIC.** Admitted to bar, 2002, New York. Education: University of Mississippi (B.A., magna cum laude, 1997), Phi Kappa Phi; Cornell Law School (J.D./LL.M., cum laude 2001). Practice Areas: Mergers and Acquisitions; Corporate Law; Securities. Email: IVujic@KKWC.com

**SOFIA S. TSYTSAREV.** Admitted to bar, 2004, NewYork. Education: Hofstra University (B.B.A., 2000); Hofstra University School of Law (J.D., 2003). Practice Area: Real Estate. Email: STsytsarev@KKWC.com

**JASON I. DIENER.** Admitted to bar, 2002, New Jersey; 2003, New York. Education: Brandeis University (B.A., magna cum laude, 1998); Boston University School of Law (J.D., cum laude 2001); Boston University (M.B.A., 2002); New York University (LL.M. 2005). Served as law clerk to Hon. Arthur L. Nims, III, 2005-2006. Practice Area: Tax. Email: JDiener@KKWC.com

**ANTHONY MONTARULI.** Admitted to bar, 2007, New York. Education: College of the Holy Cross (B.A. summa cum laude, 2003); Boston College Law School (J.D., cum laude, 2006). Practice Areas: Hedge Funds; Securities and Corporate Finance. Email: AMontaruli@KKWC.com

**CHRISTOPHER TERRY.** Admitted to bar, 2005, Hawaii Admission Pending, New York. Education: The College of William and Mary (B.A., 1997); University of Hawaii at Manoa (M.A., 2002); William S. Richardson School of Law (J.D., 2005). Practice Areas: Real Estate. Email: CTerry@KKWC.com

**MONIKA JAIN.** Admitted to bar, 2003, New York. Education: Colgate University (B.A., cum laude, 1996); Northwestern University (J.D., 2002); New York University School of Law (LL.M., Taxation, 2006). Member: American Bar Association (Real Property, Probate and Trust Section), New York State Bar Association (Trusts and Estates Law Section), New York City Bar Association. Practice Areas: Estate Planning and Administration. Email: MJain@KKWC.com

⚓ back to top †

**Home  | Our Firm  | Our History  | Newsletters |  Articles |  Contact us**

© 2000 Kleinberg, Kaplan, Wolff & Cohen, P.C.            **Viewing & Printing Our Site      Disclaimer**

**EXHIBIT 3**

1

1<GO>SEND 3<GO>SPELL CHECK 24<GO>IB 99<GO>OPTIONS                    Equity**MSG**

| SENDING MESSAGE |                                              English

To store recipient's name in your speed dialer, enter a mnemonic in white box

TO: █████████  •RAYMOND YU                          ray.yu@bloomberg.net

          AMERICAN CAPITAL STR

(516)922-5458 OFFICE   (401)456-1531 OFFICE

**USER
INFO**

**IB**

Allow forwarding?█          Delay message until █/█ █:█   Freq█

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900        Singapore 65 6212 1000     U.S. 1 212 318 2000        Copyright 2008 Bloomberg Finance L.P.

I-d

# Area code 516

*You can support Wikipedia by making a tax-deductible donation.*

From Wikipedia, the free encyclopedia

**Area code 516** is used for Long Island's Nassau County, located directly east of the New York City borough of Queens and west of Suffolk County.

Upon nationwide adoption of area codes in October 1947, Nassau, along with Suffolk, was given the 914 area code along with about half a dozen counties to the north of New York City until it split very soon after in 1951, giving Long Island the **516** area code exclusively.

This area code used to serve both Nassau and Suffolk counties until November 1, 1999, when Suffolk County received the 631 area code.

## See also

- List of NANP area codes
- North American Numbering Plan

| State of New York Area Codes: 212, 315, 347, **516**, 518, 585, 607, 631, 646, 716, 718, 845, 914, 917 | | |
|---|---|---|
| | **North:** 203 | |
| West: 347/718, 917 | **area code 516** | East: 631 |
| | **South:** Atlantic Ocean | |

Retrieved from "http://en.wikipedia.org/wiki/Area_code_516"

Categories: New York geography stubs | Area code stubs | Area codes in the United States | Area codes in New York

- This page was last modified on 1 February 2008, at 21:17.
- All text is available under the terms of the GNU Free Documentation License. (See **Copyrights** for details.)
  Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a U.S. registered 501(c)(3) tax-deductible nonprofit charity.

WhitePages.com – Online Directory Assistance

5/19/08 8:5



Listing detail for Raymond Yu

**Raymond Yu**
**13 Hilltop Ln**
**Oyster Bay, NY 11771-3903**
*phone number unavailable*

Listing date Apr. 2007

Copyright © 1999-2008 PPC_Google. All rights reserved.
Privacy Policy, Legal Notice and Terms under which this service is provided to you.

Microsoft MapPoint Terms of Use and Privacy Statement

Case 1:08-cv-01698-GBD   Document 16-4   Filed 05/27/2008   Page 5 of 7

# MAPQUEST.



One destination a day.
Prices drop every 20 minutes.
Limited quantities.

AMERICAN
EXPRESS

Going Once    GET YOUR DREAM TRIP

**A: 13 Hilltop Ln, Oyster Bay, NY 11771-3903**

| | | |
|---|---|---|
| START | **1:** Start out going NORTHWEST on HILLTOP LN toward BLUEBERRY LN. | 0.0 mi |
| ← | **2:** Turn LEFT onto BLUEBERRY LN. | 0.1 mi |
| ← | **3:** Turn LEFT onto WOODLAND RD. | 0.1 mi |
| → | **4:** Turn RIGHT onto PEACHTREE DR. | 0.1 mi |
| → | **5:** Turn RIGHT onto WHIPPET LN. | 0.1 mi |
| ← | **6:** Turn LEFT onto PEERLESS DR. | 0.2 mi |
| SOUTH 106 | **7:** Turn LEFT onto OYSTER BAY RD/NY-106 S. | 0.9 mi |
| WEST 25A | **8:** Turn RIGHT onto NORTHERN BLVD/NY-25A W/N HEMPSTEAD TURNPIKE. Continue to follow NORTHERN BLVD/NY-25A W. | 7.9 mi |
| ← | **9:** Turn LEFT onto SEARINGTOWN RD. | 1.3 mi |
| → | **10:** Turn RIGHT onto N SERVICE RD. | 0.2 mi |
| WEST 495 | **11:** Merge onto I-495 W/LONG ISLAND EXPY via the ramp on the LEFT toward NEW YORK. | 4.5 mi |
| EXIT | **12:** Take the CROSS IS PKWY NORTH exit, EXIT 31N, toward WHITESTONE BR. | 0.4 mi |
| 21 | **13:** Merge onto CROSS ISLAND PKWY N. | 3.2 mi |
| NORTH 295 | **14:** Merge onto I-295 N via EXIT 33 toward BRONX/NEW ENGLAND (Portions toll). | 3.1 mi |
| NORTH 695 | **15:** Merge onto I-695 N/THROGS NECK EXPY via EXIT 10 toward I-95 N/NEW HAVEN. | 1.7 mi |
| | **16:** I-695 N/THROGS NECK EXPY becomes I-95 N. | 1.3 mi |

**17:** Take the HUTCHINSON PKWY NORTH exit, EXIT 9.

0.1 mi

**18:** Merge onto HUTCHINSON RIVER PKWY N via the exit on the LEFT.

1.7 mi

**19:** Merge onto I-95 N via EXIT 6 toward NEW HAVEN (Portions toll) (Passing through CONNECTICUT, then crossing into RHODE ISLAND).

160.3 mi

**20:** Merge onto I-195 E/US-6 E via EXIT 20 toward EAST PROVIDENCE/CAPE COD.

0.4 mi

**21:** Take EXIT 1 toward DOWNTOWN PROVIDENCE.

0.3 mi

**22:** Turn SLIGHT LEFT onto DYER ST.

0.1 mi

**23:** Turn RIGHT onto DYER ST/US-44. Continue to follow DYER ST.

0.1 mi

**24:** DYER ST becomes MEMORIAL BLVD.

0.1 mi

**25:** Turn LEFT onto BANKBOSTON PLZ/WESTMINSTER ST.

0.1 mi

**26:** End at 76 Westminster St Providence, RI 02903-2219

Estimated Time: 3.0 hours 38 minutes     Estimated Distance: 188.12 miles

**B: 76 Westminster St, Providence, RI 02903-2219**

**Total Time: 3.0 hours 38 minutes     Total Distance: 188.12 miles**



Directions and maps are informational only. We make no warranties on the accuracy of their content, road conditions or route usability or expeditiousness. You assume all risk of use. MapQuest and its suppliers shall not be liable to you for any loss or delay resulting from your use of MapQuest. Your use of MapQuest means you agree to our Terms of Use

**EXHIBIT 4**



**Nasdaq: AGNC**

**Current Stock Price\***

Last Sale$19.51

BETHESDA | PROVIDENCE

**Our Business**
**Our Portfolio**
**Investor Relations**
**News**
**Our People**
**Contact Us**
**Site Map**
**American Capital**
**Home**

OUR PEOPLE

**Russell J. Jeffrey**

**Senior Vice President and Chief Investment Officer, American Capital Agency Corp.**
**Vice President, American Capital Agency Management, LLC**

Russell J. Jeffrey joined American Capital in September 2007 to head the RMBS investment team. Mr. Jeffrey is currently the majority owner and a managing member of PIM, which he co-founded in November 2003. Between January 2003 and November 2003, Mr. Jeffrey was not affiliated with a fund or management company and was a private investor. Mr. Jeffrey was co-founder and investment manager of Watch Hill, from December 1993 to December 2002. At Watch Hill, Mr. Jeffrey was responsible for managing the trading activities of private investment funds which employed an agency security investment strategy. Prior to Watch Hill, Mr. Jeffrey was a Managing Director and department head of Mortgage-Backed Securities Trading and Sales for Prudential Securities, Inc. During his tenure at Prudential Securities, Inc. he also served on the firm's Operating Council and Risk Management Committee.

Home | Site Map | Privacy | Legal
*Email this page's link to a colleague*
© 2008 American Capital Agency Corp. All Rights Reserved.



**Nasdaq: AGNC**

**Current Stock Price***

Last Sale$19.27

BETHESDA | PROVIDENCE

**Our Business**

**Our Portfolio**

**Investor Relations**

**News**

**Our People**

**Contact Us**

**Site Map**

**American Capital**

**Home**

OUR PEOPLE

**Raymond R. Yu**

**Vice President, American Capital Agency Management, LLC**

Raymond R. Yu joined American Capital's RMBS investment team in September 2007. Mr. Yu served as a Portfolio Manager for PIM from 2005 to 2007. Prior to joining PIM, Mr. Yu served as an Associate Portfolio Manager for the Watch Hill Group from 1995 to 2004. At the Watch Hill Group, he assisted in running the mortgage derivative portfolio. From 1989 to 1994, Mr. Yu worked at Prudential Securities. During his time at Prudential, he was Head of CMO Structuring and a derivative trader. In 2006, Mr. Yu was published in the Handbook of Mortgage-Backed Securities (Sixth Edition), edited by Frank J. Fabozzi (New York: McGraw-Hill Publishing Co., 2006) where he co-authored the chapter on Inverse Floating-Rate Collateralized Mortgage Obligations.

Home | Site Map | Privacy | Legal
*Email this page's link to a colleague*
© 2008 American Capital Agency Corp. All Rights Reserved.

**EXHIBIT 5**

*The Following are excerpts from 2/11/08 SEC file 333-149167 for American Capital Agency Corp. REIT underwritten by Merrill Lynch and Citigroup Global Markets:*

*From pages 56-57*

**Russell J. Jeffrey** is one of our Senior Vice Presidents and Chief Investment Officer and a Vice President of our Manager. He is also a Senior Vice President and Managing Director of American Capital. Since joining American Capital in September 2007, Mr. Jeffrey has headed American Capital's RMBS investment team. Mr. Jeffrey is currently the majority owner and a managing member of PIM, which he co-founded in November 2003. Between January 2003 and November 2003, Mr. Jeffrey was not affiliated with a fund or management company and was a private investor. Mr. Jeffrey was co-founder and investment manager of Watch Hill, from December 1993 to December 2002. At Watch Hill, Mr. Jeffrey was responsible for managing the trading activities of private investment funds which employed an agency security investment strategy. Prior to Watch Hill, Mr. Jeffrey was a Managing Director and department head of Mortgage-Backed Securities Trading and Sales for Prudential Securities, Inc. During his tenure at Prudential Securities, Inc. he also served on the firm's Operating Council and Risk Management Committee.

**Raymond R. Yu** is a Vice President of our Manager. He is also a Vice President and Principal of American Capital, where he works for the RMBS investment team. Mr. Yu served as a Portfolio Manager for PIM from January 2004 to September 2007. Prior to joining PIM, Mr. Yu served as an Associate Portfolio Manager for Watch Hill from February 1995 to January 2004. At Watch Hill, he assisted in running the mortgage derivative portfolio. From June 1989 to December 1994, Mr. Yu worked at Prudential Securities. During his time at Prudential, he was Head of CMO Structuring and a derivative trader. In 2006, Mr. Yu was published in the Handbook of Mortgage-Backed Securities (Sixth Edition), edited by Frank J. Fabozzi (New York: McGraw-Hill Publishing Co., 2006) where he co-authored the chapter on Inverse Floating-Rate Collateralized Mortgage Obligations.

**Edward D. Smith** is a Vice President of our Manager. He is also a Vice President of American Capital, where he works for the RMBS investment team. Mr. Smith served as a Portfolio Manager of PIM from September 2005 to September 2007. From January 2000 to September 2005, Mr. Smith served as an Associate Portfolio Manager for Watch Hill. From July 1995 to January 1999, Mr. Smith was a Managing Director in the MBS Sales Group at Merit Capital. Prior to working at Merit Capital, Mr. Smith was a Vice President of MBS Sales at Nikko Securities from July 1993 to November 1994. From January 1990 to July 1993, he served as a MBS derivative trader at Prudential Securities.

**American Capital Strategies, Ltd.**

American Capital had approximately $17 billion of assets under management and over 300 investment professionals as of <u>September 30, 2007</u>. American Capital's business consists of two primary segments—its middle-market investment portfolio and its global alternative asset management business. American Capital, both directly and through its global alternative asset management business, is an investor in management and employee buyouts, private equity buyouts and early stage and mature private and public companies. From its initial public offering in 1997 to <u>September 30, 2007</u>, it has invested, directly and through its funds under management, including funds committed but undrawn under credit facilities and equity commitments, approximately $6 billion in equity securities and approximately $18 billion in debt securities of middle market companies including approximately $1 billion in commercial mortgage-backed securities, or CMBS, and approximately $0.3 billion in collateralized debt obligations, or CDOs.

In September 2007, American Capital hired its eight-member RMBS investment team, led by Mr. Jeffrey, our Chief Investment Officer, in order to pursue various RMBS investment strategies. Since October 2007, American Capital has invested approximately $29 million in an investment vehicle that employs a credit-sensitive RMBS investment strategy and does not target, but may invest in agency securities. This investment vehicle is managed by an American Capital affiliate. American Capital has agreed that so long as the Manager is an affiliate of American Capital that it will not sponsor another investment vehicle that invests exclusively in whole pool agency securities. For so long as Mr. Jeffrey is employed by American

Capital, he has agreed with American Capital that investment vehicles managed by PIM will not purchase investments in whole pool agency securities and related derivative securities.

American Capital has developed an institutionalized approach to its global alternative asset management business through exceptional management, supported by a fully-integrated organization and infrastructure. Through the administrative services agreement, our Manager will have access to American Capital's employees, infrastructure, business relationships, management expertise and capital raising capabilities, including its extensive financial reporting operations, dedicated equity and debt capital markets fund raising teams, business development and legal teams. Over the years, American Capital has developed comprehensive financial monitoring policies and procedures, which we believe will be beneficial to us as we effectively manage and increase our investment portfolio over time. American Capital's key functional teams are described below.

### From Page 10.

### Time Commitments of Our Management Team

Our Manager will be responsible for making all of our investments. Each of our and our Manager's officers, as well as the members of American Capital's RMBS investment team who will provide services to us, is an employee of American Capital or its affiliates and none of them will devote his time to us exclusively. Each of Messrs. Wilkus, Erickson, Flax and McHale, who will be the initial members of our Manager's investment committee, is an officer of American Capital and has significant responsibilities to American Capital and certain of its various portfolio companies, affiliated entities or managed funds. Messrs. Jeffrey, Yu and Smith and the five other members of American Capital's RMBS investment team will provide services to us and may provide services to American Capital or other RMBS investment vehicles that have been or may be sponsored by American Capital in the future.

In addition, Mr. Jeffrey is currently the majority owner and a managing member of Providence Investment Management, LLC, or PIM, an investment advisor that is not affiliated with American Capital. PIM manages investment vehicles that as of , 2008 had less than $ million in total assets and invest in RMBS and associated mortgage derivatives. For so long as Mr. Jeffrey is employed by American Capital, he has agreed with American Capital that investment vehicles managed by PIM will not purchase investments in whole pool agency securities and related derivative securities. He has also agreed with American Capital that he will devote his full-time attention and energies to his employment with American Capital, but he will be entitled to continue to provide services to PIM and investment vehicles managed by PIM, as long as these activities do not detract significantly from his work on behalf of American Capital and he devotes such of his time and effort to managing American Capital-sponsored RMBS investment vehicles, including our company, as is reasonably necessary and appropriate. For so long as he is an employee of American Capital, Mr. Jeffrey will cause all management fees earned by PIM to be assigned to American Capital or a designee of American Capital, but he will be entitled to retain all incentive fees earned by PIM. Due to the fact that each of our and our Manager's officers and American Capital's RMBS investment team are responsible for providing services to American Capital and/or certain of its portfolio companies, affiliated entities or managed funds and Mr. Jeffrey, through PIM, continues to manage investment vehicles not affiliated with American Capital for which he is entitled to earn incentive fees, they may not devote sufficient time to the management of our business operations.

### From Page. 49

- *Experienced RMBS Investment Team.* Mr. Jeffrey, our Senior Vice President and Chief Investment Officer, has over 20 years of experience trading and investing in RMBS. Since joining American Capital in September 2007, Mr. Jeffrey has led American Capital's eight-member RMBS investment team, which includes Messrs. Yu and Smith, each of whom is an officer of our Manager. Messrs. Jeffrey, Yu and Smith have an average of 21 years of RMBS investing experience and have worked together for the majority of their professional careers. We expect American Capital's experienced investment team to be a differentiating competitive advantage relative to our competitors.

- *Focused Investment Strategy.* Our investment strategy seeks to optimize our risk adjusted returns by creating an investment portfolio consisting exclusively of agency securities. Because we will invest exclusively in agency securities, our investment portfolio will have limited credit risk due to the guarantee of principal and interest payments by a U.S. Government agency or U.S. Government-sponsored entity. We expect our focused investment strategy to be a competitive advantage relative to other residential mortgage investors that have experienced a deterioration in the credit performance of their residential mortgage loan investment portfolios.

- *Access to American Capital's Fund Raising Capabilities.* We will have access to American Capital's infrastructure including its dedicated equity and debt capital markets teams, which collectively have 21 employees, as of <u>September 30, 2007</u>. American Capital has demonstrated its ability to raise significant amounts of debt and equity capital during various market environments and we believe we will benefit from American Capital's experience and guidance in this regard. Since its initial public offering in 1997 through <u>September 30, 2007</u>, American Capital has completed 30 common stock offerings raising net proceeds in excess of $5 billion, successfully raised approximately $4 billion of public and private term debt and completed 10 securitization transactions totaling approximately $3 billion. Additionally, American Capital has equity and debt financing relationships with more than 40 global financial institutions. We believe that having access to American Capital's fund raising capabilities provides a competitive advantage relative to our competitors and will assist us in our efforts to build our investment portfolio over time.