UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

KIMBERLY STEEL,                                               :

                                        Plaintiff,            :

                                                              :    MEMORANDUM DECISION AND
                                                              :              ORDER

                      - against -                             :       08-cv-1698 (GBD)

                                                              :

WATCH HILL MANAGEMENT CORPORATION, WATCH      :
HILL INVESTMENT PARTNERS L.P., PROVIDENCE     :
INVESTMENT MANAGEMENT, LLC, AND RUSSELL       :
JEFFREY                                        :

                                     Defendants.  :

------------------------------------------------------------------- x

GEORGE B. DANIELS, United States District Judge:

   Plaintiff Kimberly Steel commenced this action against defendants Watch Hill

Management Corp. ("W.H. Management"), Watch Hill Investment Partners L.P. ("W.H. Ptnrs."),

Providence Investment Management, L.L.C. ("Providence"), and Russell Jeffrey.  Plaintiff seeks

to recover bonuses allegedly owed to her pursuant to an employment agreement effective

February 8, 1995 that she entered into with W.H. Management.  Defendants Jeffrey and

Providence moved to dismiss this action for lack of personal jurisdiction pursuant to Rule

12(b)(2) of the Federal Rules of Civil Procedure or, in the alternative, to transfer venue to the

district court in Rhode Island under 28 U.S.C. § 1404(a).  Defendants' motion is denied.

## NEW YORK CONTACTS

   Steel, an Idaho resident, was employed by W. H. Management, a New York corporation,

as its Managing Director of Investment relations from February 1995 until W. H. Management

terminated plaintiff's employment on January 28, 2004.  Complaint at ¶¶ 7, 19.  The

Employment Agreement outlined the terms of her employment and stated that she would "manage investor relations and ... provide administrative, management[,] and marketing services for" W.H. Management, W.H. Ptnrs., also a New York corporation, and the Watch Hill Fund L.P. ("Watch Hill"), a limited partnership in which W.H. Ptnrs. was the general partner. See Emp. Agmt. at 1; Complaint at ¶ 8. For her services, W.H. Ptnrs. and W.H. Management agreed "to pay Steel in perpetuity a quarterly bonus based on the amount of investments in W.H. Ptnrs. by limited partners who are introduced by Steel to W.H. Ptnrs." Agreement at 2-3. The Employment Agreement further stated:

> In the event the General Partner or any affiliate thereof establishes, acts as general partner to, manages, operates or controls another securities investment partnership, securities investment company, securities investment fund or securities investment account, Steel's bonus computation hereunder will, in addition to the capital accounts of Referred Limited Partners[1] in [W.H. Ptnrs.], include and be based, in addition, on the capital accounts of Referred Limited Partners in any such other securities investment partnership, securities investment company, securities investment fund or securities investment account. Id. at 3.

The parties to the Employment Agreement agreed that they would submit to binding arbitration if a dispute arose under the contract. Id. at 5. That arbitration was to be conducted in New York, pursuant to the rules of the American Arbitration Association. Id. They further stipulated that the Employment Agreement would be construed under New York law. Id.

When Steel entered into the Employment Agreement, defendant Jeffrey, a resident of Rhode Island, was a general partner of W.H. Ptnrs. Complaint at ¶ 10; Affidavit of Russell Jeffrey dated May 6, 2008 ("May 6th Jeffrey Aff.") at ¶ 1. Along with David Weisenberger, another General Partner of W.H. Ptnrs, Jeffrey executed the guaranty contained in the

---

[1] The Employment agreement defined "Referred Limited Partners" as "limited partners who are introduced by Steel" to W.H. Ptnrs. See Agreement at 2-3.

Employment Agreement on behalf of W.H. Ptnrs.  <u>See</u> Agreement at 6.  The Guaranty provided that W. H. Ptnrs. would insure "full and prompt payment" of W.H. Management's obligations to plaintiff.  <u>See</u> May 6th Jeffrey Aff. at ¶ 6; Complaint  at ¶ 15.[2]

In December 2001, Jeffrey resigned from his position at W.H. Ptnrs.  See June 4th Jeffrey Aff. at ¶ 3.  In 2004, Jeffrey founded defendant Providence, a hedge fund incorporated in the State of Delaware that has its primary office in Rhode Island.  <u>See</u> May 6th Jeffrey Aff. at ¶¶ 7, 9; <u>see also</u> Complaint ¶¶ at 10-12.  Plaintiff alleges that on Providence's behalf, Jeffrey "solicited and/or accepted investments from Referred Limited Partners that Steel had introduced to Watch Hill" pursuant to the Employment Agreement.  Complaint at ¶ 24.  Plaintiff claims that she is entitled to quarterly bonuses based on investments Providence has received from those Referred Limited Partners and that Providence has tortiously interfered with Jeffrey's duties in ensuring W.H.Ptnr.'s performance of its obligations under the Guaranty.  Complaint at ¶ 30-31.

On or about September 10, 2007, plaintiff served a demand for arbitration on W. H. Management, W.H. Ptnrs., Jeffrey, and Providence, seeking to recover allegedly unpaid bonuses.  Kimberly Steel Affidavit dated May 23, 2008 ("Steel Aff.") at ¶ 17.[3]  Defendants Jeffrey and Providence moved by order to show cause filed in the Supreme Court of the State of New York, New York County for a stay of arbitration on the ground that they were not parties to the arbitration agreement.  <u>See</u> May 6th Jeffrey Aff., Ex. B at 3.  In an order dated January 14, 2008, the New York Supreme Court granted defendants' petition to stay the arbitration.  <u>Id.</u> at 8.

---

[2] Weisberger, on behalf of W. H. Management, and plaintiff executed a "Supplement to Employment Agreement" effective January 1, 1996.  That supplemental agreement revised certain terms of plaintiff's compensation in the event of her termination but did not materially alter any of the provisions relevant to the instant motion.  <u>See</u> Agreement at 6-9.

[3] <u>See also</u> May 6th Jeffrey Aff., Ex. B at 3.

In support of their motion to dismiss, defendants argue that their business contacts in New York are insufficient to provide a statutory basis for jurisdiction under New York law. Specifically, Jeffrey denies that he has "transacted business in New York [] or entered into a contract to supply goods or services in New York ... upon which plaintiff makes her claim." May 6th Jeffrey Aff. at ¶ 16. Jeffrey also avers that he does not "have a New York office, bank account or property" and that he does not pay New York taxes. Id. at ¶ 17. He does, however, admit that he is an executive officer of American Capital Agency Corporation, a company with offices in New York. See Affidavit of Russell Jeffrey dated June 4, 2008 ("June 4th Jeffrey Aff.") at ¶ 19.[4]

With respect to Providence's New York contacts, Jeffrey affirms that the company does not "have a New York office, bank account or property" and does not pay New York taxes. June 4th Jeffrey Aff. at ¶ 7. Jeffrey also contends that Providence does not "solicit business" in New York because it is prohibited from generally soliciting clients under Rule 502( c) of Regulation D of the Securities Act of 1933. Id. at ¶ 17; see also 17 C.F.R. § 230.502 (c) (2007). Jeffrey concedes that Providence's Senior Portfolio Manager, Raymond Yu, resides in New York, works for Province on a consistent basis from his New York residence, and pays New York income taxes. June 4th Jeffrey Aff. at ¶¶ 9, 10; see also Steel Aff. at ¶¶ 19(e) ("Mr. Yu performs virtually all of his duties for Providence from his Oyster Bay, New York home"); 20 ("Raymond Yu is a Vice President of American Capital Agency Management, LLC and a Vice president and

---

[4] Compare Steel Aff. at ¶ 20 ("in addition to being the CEO, Principal and Chief Investment strategist of Providence, [Jeffrey] is a Senior Vice President and Chief Investment Officer for American Capital Agency Corporation, Vice President to American Capital Agency Management, LLC and Senior Vice President and Managing Director of American Capital").

-4-

Principal of American Capital").  However, Jeffrey notes, "Providence does not list Mr. Yu's home address as one of its offices" and "nothing that he does is unique to New York."  June 4th Jeffrey Aff. at ¶ 14.

Plaintiff argues that because Jeffrey and Providence made general appearances in the New York courts in connection with their motion to stay arbitration of plaintiff's claims, they are now estopped from raising objections to this Court's exercise of personal jurisdiction in this action.  See Pl. Opp. Memo. at 3; Steel Aff. ¶ 18.  Additionally, plaintiff alleges, based on documentary evidence submitted with her affidavit, that Providence regularly conducts business with various New York securities firms and investment banks.  Id. at 19.  Plaintiff also maintains that Providence's "Legal Representative" and accounting firms are all located in New York City. Id.

## JURISDICTIONAL REQUIREMENTS

Prior to discovery, a plaintiff facing a motion to dismiss pursuant to Rule 12(b)(2) need only make a *prima facie* showing that the exercise of jurisdiction is proper.  Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).  At that preliminary stage, jurisdiction may be established on the basis of allegations alone, and all averments of jurisdictional facts are accepted as true.  In re Magnetic Audiotape Antitrust Lit., 334 F.3d 204, 206 (2d Cir. 2003).  In this case, the parties have not engaged in jurisdictional discovery, and no evidentiary hearing has been held.

Under Federal Rule of Civil Procedure 4(k)(1)(A), this Court may exercise jurisdiction over any defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A).  To determine whether it may exercise jurisdiction over defendants Jeffrey and Providence, this Court must ascertain: 1) whether a statutory basis for the exercise of jurisdiction exists under New York law and 2) "whether New York's extension of jurisdiction in such a cause would be permissible under the Due Process Clause of the Fourteenth Amendment." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002).

Section 301of the New York Civil Practice Law Rules ("CPLR") "allows for the assertion of 'general' personal jurisdiction, i.e. the defendant is subject to in personal jurisdiction for any and all claims regardless of whether those claims have any relationship to the defendant's New York activity."  V. C. Alexander, Practice Commentaries, reprinted in McKinney's Consolidated Laws of New York, CPLR C301:8 at 25 (2001).  Only when a non-domiciliary is "doing business in New York not occasionally or casually, but with a fair measure of permanence and continuity" is the exercise of jurisdiction under CPLR § 301 proper.  Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 762 (2d Cir. 1983) (internal quotations and citation omitted).  If the totality of a defendant's in-state contacts satisfies the "doing business" requirement of CPLR § 301, "there is no need to establish a connection between the cause of action in issue and the foreign defendants's business activities within the State, because the authority of the New York courts is based solely upon the fact that the defendant is engaged in such continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." McGowan v. Smith, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 322 (N.Y. 1981).

A "corporation's doing of business is measured by the aggregate of its business activity within the state."  Alexander, supra, CPLR C301:8 at 26.  The mere shipment of goods into New York "does not *ipso facto* constitute doing business" for purposes of CPLR § 301.  Beacon Enterprises, 715 F.2d at 763; see also McGowan, 52 N.Y.2d at 271, 419 N.E.2d at 322 ("In addition to the shipment of goods into the state, there must have been some 'purposeful activities' within the State that would justify bringing the nondomiciliary defendant before New York courts").  Likewise, mere proof that an out of state defendant has "[a] business relationship with a New York entity does not provide a sufficient basis for jurisdiction at least in the absence of a showing that that company has become an agent or division of the company over which the plaintiff seeks to exercise personal jurisdiction."  Landoil Resources Corp. v. Alexander & Alexander Services, Inc., 918 F.2d 1039, 1046 (2d Cir. 1991).  Rather, "[t]o be considered an agent for jurisdictional purposes, the alleged agent must have acted in the state for the benefit of and with the knowledge and consent of the non-resident principal."  Cutco Industries, Inc. v. Naughton, 806 F.2d 361, 366  (2d Cir. 1986) (internal quotations and citation omitted).

CPLR 302(a)(1) allows a plaintiff "to bring the foreign defendant within the power of the New York courts upon a lesser showing of some business contacts within the State only if he demonstrates that his cause of action arose out of those business contacts."  McGowan, 52 N.Y.2d at 273, 419 N.E.2d at 323; see also Beacon Enterprises, 715 F.2d at 763.  At the core of CPLR § 302(a)(1) is the requirement that a defendant have purposefully availed "himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws."  Cutco Industries, 806 F.2d at 365 (internal quotations and citation omitted).  Accordingly, a plaintiff must demonstrate "the existence of some articulable nexus between the

business transacted and the cause of action sued upon." <u>McGowan</u>, 52 N.Y.2d at 272, 419 N.E.2d at 322.

If the requirements of either CPLR § 301 or § 302 have been met, it must then be determined "whether New York's extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment." <u>Bank Brussels Lambert</u>, 305 F.3d at 124; <u>see</u> <u>also</u> <u>Cutco Industries,</u> 806 F.2d at 365 ("The totality of all defendant's contacts within the forum state must indicate that the exercise of jurisdiction would be proper").  "[M]inimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." <u>Asahi Metal Indus. Co., Ltd.</u>, 480 U.S. 102, 109, 107 S.Ct. 1026, 1030 (1987).  This Court must assess "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief," and decide whether the exercise of jurisdiction over defendants comports with the notions of fair play and substantial justice.  <u>Id.</u> at 113, 107 S.Ct. at 1033.  Both the "quality and degree" of defendants' New York activities, including its business and non-business contacts must be analyzed.  <u>Id</u>.  <u>Bank Brussels Lambert</u>, 305 F.3d at 126; <u>Beacon Enterprises</u>, 715 F.2d at 766.  This Court must also take into account the New York's "legitimate interests in the dispute."  <u>Asahi</u>, 480 U.S. at 114, 107 S.Ct. at 1033.

### JURISDICTION OVER DEFENDANTS

Plaintiff Steel argues that this Court may exercise general jurisdiction over defendant Jeffrey because 1) he is "doing business" in-state through his executive officer position with American Capital; 2) Jeffrey consented to New York jurisdiction by executing the Guaranty in New York on behalf of W.H. Ptnrs.; and 3) Jeffrey and Providence waived any objections they

may have had to New York jurisdiction by commencing an action in New York Supreme Court to stay arbitration of plaintiff's claim.  Plaintiff also maintains that her claims under the Guaranty relate to defendant's in-state activities.

Jeffrey contends that plaintiff's allegations and affidavits fail to show in-state transactions which amount to "doing business" under CPLR § 301.  Jeffrey also argues that because he is not personally a party to the New York Employment Agreement, he cannot be held to have consented to New York jurisdiction implied by the arbitration clause.[5]  Moreover, Jeffrey contends that the requirements of CPLR § 302(a)(1) have not been met because plaintiff's claims relate only to her contact with New York investors on behalf of W.H. Ptnrs., not his or Providence's in-state activities.

Plaintiff has made a *prima facie* showing that Jeffrey's in-state activities as General Partner of  W.H.Ptnrs., including his execution of the Guaranty, satisfy the requirements for exercising specific jurisdiction under CPLR § 302(a)(1).[6]  Those specific activities, related to the New York Employment Agreement, provide an independent jurisdictional basis for plaintiff's claims against him.  Compare Opticare Acquisition Corp. v. Castillo, 25 A.D.3d 238, 248, 806 N.Y.S.2d 84, 93 (N.Y. App. Div. 2005) (finding specific jurisdiction over out-of-state former employees of New York corporation); Balogh v. Rayner-Smith, 30 A.D.2d 788, 788, 291 N.Y.S.2d 440, 441 (N.Y. App. Div. 1968) (holding that jurisdiction over non-resident general partner proper under CPLR § 302(a)(1)).

---

[5] See generally Am. Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 352 (2d Cir. 1999) ("It is well-settled that federal courts applying New York law have personal jurisdiction over parties that agree to arbitrate their disputes in New York").

[6] This Court need not resolve the question of whether Jeffrey is engaged in such continuous and systematic course of doing business to assert general jurisdiction under CPLR § 301.

Plaintiff maintains that CPLR § 301 confers general jurisdiction over Providence because i) its largest investors are New York corporations introduced to Providence and Jeffrey by Steel pursuant to the Employment Agreement (Steel Aff. at ¶¶ 12, 14)[7]; ii) defendants waived their objections to the exercise of jurisdiction by commencing an action in New York State Supreme Court to stay arbitration of these claims (Steel Aff. at ¶ 17); iii) Providence selected New York businesses as "prime broker[s]", legal counsel, accountants, and "Approved Counterparties" to investment agreements (Steel Aff. at ¶ 19); and iv) Providence's Senior Portfolio Manager, Raymond Yu, resides and works in New York.  Id.

Plaintiff claims that "Mr. Jeffrey and Providence conduct virtually all of their business and enter into contracts for their mortgage-backed securities funds in New York and within this judicial district."  Id. at ¶ 24.  In opposition to defendants' motion, plaintiff submitted copies of Providence's investor promotional materials which feature the company's ongoing, commercial relationships with New York-based auditors, legal counsel, and numerous transactional counter parties.  See Id. Ex. 1 at 9-10.  Those same promotional materials describe Raymond Yu as working on "Wall Street."  See Id. Ex. 1 at 14.  Raymond Yu is Providence's agent in New York for the business he conducts from his New York home office on Providence's behalf.  Also, considering plaintiff's undisputed allegations that New York companies "were the first and largest investors in Providence," that "[a] substantial number of the Referred Limited Partners were residents of and/or had their companies in New York" (see Steel Aff. at ¶¶ 15-15), and

---

[7] Defendants do not dispute plaintiff's contention that investor Andrew Ho's "companies were the first and largest investors in Providence."  Steel Aff. at ¶ 14; see also Pl. Opp. Memo. at 10 (Providence "continue[s] to receive investments and/or utilize funds from Steel Referred Limited Partners, who are largely New York based investors").  Defendants, however, argue that although Ho is a New York  resident, he "is not an individual investor in" or officer of Providence and works out of a Connecticut office.  June 4th Jeffrey Aff. at ¶ 16).

Providence's own promotional materials which represent its extensive relationships with New York entities, plaintiff has made a *prima facie* showing that Providence is "doing business" under CPLR § 301.

### DUE PROCESS ANALYSIS

Because the requirements of New York's jurisdictional statutes have been met, the constitutionality of New York's extension of jurisdiction in this case must also be considered. Bank Brussels Lambert, 305 F.3d at 124; Cutco Industries, 806 F.2d at 365. "The factors [weighed] ... in making this assessment are: (1) the burden on the defendant[s], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." Opticare, 25 A.D.3d at 248, 806 N.Y.S.2d at 92.

In this case, a review of the relevant factors demonstrates that the assertion of jurisdiction over the defendants is consistent with constitutional due process. New York is neither an inconvenient nor burdensome venue for defendants, as demonstrated by defendants' initial lawsuit in New York State Supreme Court. New York has an interest in litigation of a dispute over a New York employment agreement and executed guaranty construed under New York laws, and a claim asserted pursuant to New York Labor Law § 191(c). Further taking into account that there would be no greater efficiency if plaintiff were forced to litigate her claims against Jeffrey and Providence in Rhode Island, this Court finds that the exercise of jurisdiction comports with notions of "fair play and substantial justice." See Asahi, 480 U.S. 113-14, 107 S.Ct. at 1032.

## TRANSFER OF VENUE TO RHODE ISLAND

Defendants ask this Court, in the alternative, to transfer this case to the United States District Court for the District of Rhode Island pursuant to 28 U.S.C. § 1404(a).  28 U.S.C. § 1404(a) authorizes the "transfer any civil action to any other district or division where it might have been brought ... [f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a) (2006).  Among the factors that this Court must evaluate to determine whether transfer of venue is proper are: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties."  D. H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-7 (2d Cir. 2006).

In this action, defendants argue that a transfer of venue is required in the interest of justice primarily because "[t]he majority of the witnesses, such as Providence employees, reside in Rhode Island."  Def. Memo. at 16.  Defendants do not, however, identify any specific witnesses who would be inconvenienced by having to appear in New York for trial.  Plaintiff, on the other hand, has identified at least two potential witnesses, Andrew Ho and Raymond Yu, who are New York residents.  Steel Aff. at ¶¶ 14, 20.  Plaintiff also names other New York companies that, in addition to defendants W.H. Management and W.H Ptnrs., are likely to have evidence relevant to her claims.  See Id. at ¶ 19 (Providence's accounting firm and legal representatives are located in New York City).  Plaintiff further alleges that a "substantial number of the Referred Limited Partners were residents of and/or had their companies in New York."  Steel Aff. at ¶ 15. Plaintiff has submitted evidence that Jeffrey's and Providence's investment activities involve

multiple New York-based investors and transactional partners.  New York is the locus of operative facts in this matter.  No serious issues have been raised concerning the availability of process to compel the attendance of unwilling witnesses, or the relative means of the parties to litigate in this forum.  There is no convenience basis for transferring the case against Jeffrey and Providence to Rhode Island.

CONCLUSION

Defendants Jeffrey's and Providence's motion to dismiss for lack of personal jurisdiction or, in the alternative, for transfer of this case to the United States District Court for Rhode Island is DENIED.


Dated: New York, New York
      March 16, 2009

                                            SO ORDERED:

                                            GEORGE B. DANIELS
                                          United States District Judge


-13-